Chester L. OUGHTON, Appellant,

v.

STATE of Alaska, Appellee.

No. 478.

Supreme Court of Alaska.

Dec. 2, 1966.

Harold J. Butcher, Anchorage, Court appointed counsel, for appellant.

Warren C. Colver, Atty. Gen., Juneau, Dorothy Awes Haaland, Asst. Atty. Gen., Anchorage, for appellee.

OPINION

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

NESBETT, Chief Justice.

On December 17, 1952, appellant pleaded guilty in the U. S. District Court for the Territory of Alaska to indictments charg-

ing him with first degree murder, assault with a dangerous weapon and escape. He was sentenced to life imprisonment at hard labor on the charge of first degree murder and to five years and one year imprisonment, respectively, on the remaining indictments, to be served concurrently with the life sentence.

During the intervening years appellant has prosecuted some twenty-three writs in the territorial, United States, and state courts in efforts to have the plea and conviction set aside.

The present appeal grows out of a motion filed by appellant in this court on March 10, 1964, to vacate and set aside appellant's judgment of conviction under Criminal Rule 35(b). The motion was assigned to the superior court with directions to permit appellant to proceed in forma pauperis, to conduct a hearing, determine the issues and make findings of fact and conclusions of law.

A full hearing was held on January 7 and 8, 1965, for which appellant was brought to Anchorage from Leavenworth, Kansas, and provided with two court appointed counsel. The issues were then briefed and argued by counsel. The superior court filed a memorandum opinion on April 29, 1965, holding that appellant was entitled to no relief. Findings of fact and conclusions of law were filed on June 14, 1965. Appellant has prosecuted this appeal in forma pauperis.

The first point on appeal raised by court appointed counsel is that appellant's rights under the Sixth Amendment to the United States Constitution were violated when appellant was interrogated and a written statement concerning the homicide was obtained from him while he was without the effective assistance of counsel. Gideon v. Wainwright,[1] is cited as authority for this. claim of error.

█ In its ruling on this point the trial court properly held that since *Gideon* had to do with the right of an indigent defendant· to the assistance of counsel, it had no application to the facts of appellant's case, since it is undisputed that he had the assistance of court appointed counsel at his arraignment, plea and sentencing. The trial court likewise properly held that Escobedo v. State of Illinois [2] had no application because the statement or confession made by appellant was never admitted in evidence, since there had been no trial.[3]

Appellant argued below, as he argues here, that the very existence of the confession caused him to later enter a plea of guilty because he was afraid that Judge George W. Folta, then a United States District Court Judge for the First Judicial Division of the Territory of Alaska, would sentence him to be hanged if he pleaded not guilty and went to trial.

On this point the trial court weighed all of the testimony and found that the motivating factor in appellant's plea of guilty was the fact that he was guilty and with his criminal record "he reasoned that it was possible that he would get a death sentence if he was tried by a jury. In order to play safe he insisted that his attorney plead him guilty so that he would get a life sentence."

Appellant argues in connection with this point that he was effectively deprived of counsel because court appointed counsel was inexperienced in criminal representation and was not appointed until December 15, 1952, whereas appellant entered his plea of guilty and was sentenced two days later on December 17, 1952.

█ The trial court points out in its memorandum opinion that appellant, on his

1. 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

2. 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed. 2d 977 (1964).

3. In addition, in Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966) it was held that the decision in Escobedo should not be applicable to cases where trial was begun *before* June 22, 1964.

own initiative contacted attorney T. Stanton Wilson by letter on June 16, 1952,[4] stating that he understood that Mr. Wilson was one of the best attorneys in Anchorage and that he wished to have the court appoint him. Mr. Wilson accepted the case by letter on June 18, 1952. Some correspondence was exchanged between them between that time and December 15, 1952, when appellant was arraigned. At appellant's request at the arraignment the court appointed Mr. Wilson to represent him as to all of the indictments.

The transcript of proceedings had at the sentencing on December 17, 1952, reveals that the following transpired:

COURT: Mr. Wilson?

MR. WILSON: Your Honor, the defendant in this case has made peace with himself and he was aware of the recommendation that the District Attorney would make in this case. He is disposed to plead guilty to the three charges and respectfully requests that the Court follow the recommendations of the District Attorney in this case—life sentence, five years, and one year to run concurrently.

COURT: You may stand, Mr. Oughton. Have you anything to say?

MR. OUGHTON: No, Your Honor.

Appellant's testimony at the January 7, 1965, hearing was that he was in effect coerced by Federal jail officials at Seward, Alaska, into entering a plea of guilty by their repeated statements to him that his trial would be handled by Judge Folta and that in view of his confession if he did not plead guilty he would be hanged.

Appellant was impeached by his own admissions numerous times on cross-examination. When asked why he was afraid of

his confession when it alleged that the act was committed in self-defense appellant replied: "I was scared to death anyway. I feared of being hung." On one occasion, when asked why he had, by his own admission, made a false written statement to the court, appellant answered:

I do not know. I was just confused and coaxed on by different prisoners. That's the only way you'll get into Court to get any action. So he [sic] says, 'You'd better put something in there like that'.

▮ We have reviewed the record in its entirety and find the trial court's findings that appellant was effectively represented by competent counsel[5] and that his plea of guilty was voluntarily entered are fully supported by evidence adduced at the hearing.

Appellant's next point is that his plea of guilty was accepted by the court in violation of Rule 11, Federal Rules of Criminal Procedure which was in force in Alaska at that time. Insofar as is pertinent this rule provided that a plea of guilty should not be accepted without first determining that the plea was voluntarily made with an understanding of the nature of the charge.[6]

In dealing with this point in its memorandum decision the trial court stated:

It is true that the record discloses that the trial judge did not in open court inquire as to whether or not defendant was entering a plea of guilty voluntarily and whether defendant understood the nature of the charge. The trial judge did have one or possibly two conferences with Mr. Wilson and the U. S. Attorney, Mr. Buckalew (TR 144). Mr. Buckalew states that at least one conference was

---

4. At the time appellant was confined in the Federal jail at Seward, Alaska because of the overcrowded condition of the Anchorage jail.

5. See Eubanks v. United States, 336 F.2d 269 (9th Cir. 1964); United States v. Wight, 176 F.2d 376 (2nd Cir. 1949), cert. denied, 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586 (1950).

6. Rule 11 of the Federal Rules of Criminal Procedure in pertinent part stated:

The court may refuse to accept a plea of guilty, and shall not accept the plea without first determining that the plea is made voluntarily with understanding of the nature of the charge.

had just prior to the time sentence was imposed (TR 145). He further stated in part that:

'* * * the gist of the conference * * * as I recall it was the judge * * * was determining for himself whether or not this plea was improvident and we went over the facts and * * * that's just about all that I recall. * * *'

Mr. T. Stanton Wilson, appellant's court appointed counsel at the time his plea of guilty was entered, testified at the hearing that if he hadn't felt that appellant's plea was voluntary and proper he would not have allowed him to make it.

In its opinion the trial court stated:

This undisputed testimony shows that the judge did inquire and find out for himself the facts of the case, whether the defendant was entering a plea voluntarily and whether the defendant understood the nature of the charge against him. There is no question but that the judge knew of and understood the provisions in Rule 11 and that he only accepted defendant's plea because he had determined from his conferences with Mr. Wilson and Mr. Buckalew that defendant's plea was voluntary and that defendant knew the nature of the charge against him and the consequences of a plea of guilty.

Appellant testified that if inquiry had been made by the judge, he would have advised him of the circumstances. The trial court points out that this testimony is offset by the fact that the transcript of proceedings does reveal that the judge asked appellant if he had anything to say why sentence should not be imposed and that appellant replied, "No, Your Honor." While this fact alone would not satisfy the requirements of Rule 11, it may perhaps be a relevant consideration where, as here, appellant repeatedly stated at the hearing that if the judge had inquired of him he would have told him of the circumstances involved in making his decision. The court specifically found that appellant had discussed the plea of guilty with his attorney who advised him of the effect of the plea.

 Our review of the record convinces us that the trial court's finding that appellant's plea of guilty was in fact voluntary and entered with an understanding of the consequences is adequately supported by the evidence. The court's refusal to set aside the conviction is amply supported by federal authorities which have interpreted Rule 11 in similar factual situations. In Domenica v. United States,[7] it was held that if a correct transcript fails to report that the sentencing court complied with Rule 11, the fact of non-compliance is established, but the court stated: "Nonetheless, if the plea was in fact voluntary, the error was harmless. On this issue the burden will be on the government."

No constitutional right of appellant's was violated.

The judgment denying appellant's motion to vacate under Criminal Rule 35(b) is affirmed.

RABINOWITZ, Justice (concurring).

Since Crim.R. 11 is identical to the provisions of Fed.R.Crim.P. 11 which are involved in this appeal, I believe it important that we avoid any intimation that Crim.R. 11 is to be administered without the court personally interrogating the defendant. Although I agree that no particular ritual is required by Crim.R. 11, I think that the better practice would be for the court to question the defendant personally in order to determine whether the plea is made voluntarily and with an understanding of the nature of the charge. United States v. Diggs, 304 F.2d 929, 930 (6th Cir. 1962); Domenica v. United States, 292 F.2d 483, 485–486 (1st Cir. 1961); Gundlach v. United States, 262 F.2d 72, 76 (4th Cir. 1958), cert. denied, 360 U.S. 904, 79 S.Ct. 1283, 3 L. Ed.2d 1255 (1959); Julian v. United States, 236 F.2d 155, 158 (6th Cir. 1956).

7. 292 F.2d 483, 486 (1st Cir. 1961).