BOND v. STATE

No. 42852        April 6, 1964        162 So. 2d 510

*Dudley W. Conner,* Hattiesburg, for appellant.

354

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

McElroy, J.

Appellant was indicted for murder in the Circuit Court of Forrest County, Mississippi, was found guilty of manslaughter and sentenced to serve twenty years in the state penitentiary.

Appellant operated a cafe in a community known as Palmer's Crossing near Hattiesburg. He shot and killed

Charlie Hicks, Jr. in front of his place of business. The deceased was unquestionably an unsavory character, or at least he so conducted himself on the day these events took place. Hicks made two trips to the Bond establishment. On the first occasion he was being obnoxious and making passes at a woman named Meland Williams and attempted to make an assault upon her person while behind the counter, having sexual relations in mind. The Williams woman prevented his further contact with her by grabbing a gun and shooting him through the fleshy part of the left arm. Hicks then left, and returned later looking for the woman who had shot him. At that time he was accompanied by another Negro man. When he went inside the cafe again causing trouble, appellant returned and made an effort to get him to leave. Hicks became violent and was forcibly carried out by his friend, Gussie Martin. While Gussie Martin was attempting to take Hicks out through the front door, another man, George Talbert, came to his aid, the two of them got him through the door toward the car, and, while Gussie Martin still had his arms around Hicks, Hicks was shot once by appellant. This shot killed Hicks almost instantly, and he and Martin went to the ground. Upon hearing the shot, Talbert started running, and looked back and saw Martin and Hicks falling together. Talbert testified that he heard one of the defense witnesses, Annie Lee Bond, wife of appellant, about the time of the shot, screaming and hollering, "Don't do that, don't do that." This was later denied by appellant's wife.

It would serve no purpose to reiterate all of the testimony in this lengthy record. Attention is particularly called to the evidence and argument of appellant that Hicks had broken loose from Martin and was returning toward appellant, was face to face with him when appellant fired the fatal shot. The distance was estimated variously at ten or twelve feet. The testimony of the state showed that Hicks was unarmed, while there was

an effort by the defense to show the presence of a gun or that Hicks had his hands in his pockets while advancing toward appellant. This conflict should be resolved in the minds of the Court, as it undoubtedly was in the minds of the jury, by the very vivid and demonstrative photographs exhibited with the testimony of one of the physicians, whose testimony was to the effect that Hicks' death was caused by a shot passing through both lungs from left to right which severed the pulmonary artery and the aorta. Front and side views of the deceased showed that the bullet nicked the left arm of Hicks and entered the left chest at a point which would almost be considered in the armpit, traversed the chest of Hicks and came to rest at almost the identical place under the right arm. These pictures clearly refute the testimony of the defense witnesses that Hicks was advancing on appellant face to face.

■■ ■ Appellant argues that the trial court erred in overruling objections made by the defendant to evidence offered by the state and in sustaining objections made by the state to testimony offered by the defendant. The sole argument under this point is that the trial court refused to allow appellant to make proof of the fact that after Meland Williams had shot Hicks, he sought the aid of law enforcement officers. In spite of the sustaining of some of the objections by the state to this line of testimony, the assignment of error is not well taken, in view of the fact that the court did allow enough of the testimony to get to the jury to show that appellant had gone to an officer and reported the shooting.

■■ ■ Appellant further argues that the court erred in overruling the motion of defendant for a directed verdict, and in refusing the instructions requested by defendant. As the facts show, this is a case where self defense is sought to be proved, and there is a conflict of testimony between witnesses for the state and witnesses for the defense. The proof shows without doubt

that deceased had been taken forcibly from inside the place of business of appellant and had been taken toward the car in which he came. The state's evidence shows that he was still being held by his friend at the time he was shot, while the defense sought to prove that he had broken loose and was charging appellant face to face.

██ ██ It is the function of the jury to pass upon the credibility of the evidence. Scott v. State, 185 Miss. 454, 188 So. 546. Only two witnesses testified for the state as to what happened at the scene of the homicide, while many more testified for the defense. ██ ██ However, the strength or weakness of testimony is not measured by the number of witnesses. Spiers v. State, 231 Miss. 307, 94 So. 2d 803. ██ ██ In a criminal prosecution, the jury may accept the testimony of some witnesses and reject that of others, and may accept in part and reject in part the testimony of any witness, or may believe part of the evidence on behalf of the state and part of that for the accused, and the credibility of such witnesses is not for the reviewing court, but only for the jury. Ivey v. State, 206 Miss. 734, 40 So. 2d 609; Cobb v. State, 235 Miss. 57, 108 So. 2d 719; Matthews v. State, 243 Miss. 568, 139 So. 2d 386.

The appellant objects to the instruction given the state as follows:

██ ██ ''The Court instructs the Jury that in order to justify a homicide on the plea of self defense there must be something shown in the conduct of the deceased indicating a present intention to kill, or to do some great personal injury to the slayer, and immediate danger of such intention being accomplished; and mere fears or belief are insufficient. The danger must be such as to lead a person reasonably to believe that the killing was necessary to prevent the deceased from killing him, or doing him some great bodily harm.'' See Holmes v. State, 199 Miss. 137, 24 So. 2d 90, where an identical

instruction was given. There was no error in the granting of this instruction.

It is argued also that the trial court should have granted appellant's motion for a new trial on the ground of an alleged improper argument made by the district attorney to the jury. In the first place, testimony was taken on the motion for new trial, and it was established by testimony of two reputable attorneys who happened to be in the courtroom at the time, and by the county attorney, that the objection to the argument of the district attorney was made at a point when he had not completed a sentence, but that the sentence was completed and did not then become objectionable. Furthermore, the only way to reach an improper argument of counsel is by objection at the time and motion for a mistrial. This was not done. Hathaway v. State, 13 So. 2d 819, suggestion of error, 195 Miss. 311, 15 So. 2d 361.

The appellant argues that the twenty-year sentence amounts to cruel or unusual punishment, prohibited by section 28 of the Mississippi Constitution. We find no merit in this point. The term of a sentence, if within the limits authorized by statute, is in the discretion of the trial court. Harris v. State, 142 Miss. 342, 107 So. 372; Jones v. State, 216 Miss. 186, 62 So. 2d 217.

Affirmed.

*Kyle, P. J., and Gillespie, Rodgers and Brady, JJ.,* concur.