Henry Allen THOMPSON, Appellant,

v.

STATE of Alaska, Appellee.

No. 626.

Supreme Court of Alaska.

May 1, 1967.

Edward J. Reasor,. Anchorage, for appellant.

Donald A. Burr, Atty. Gen., Juneau, Thomas E. Curran, Jr., Dist. Atty., William H. Fuld, Asst. Dist. Atty., Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

RABINOWITZ, Justice.

On the first occasion this matter was before us it was remanded to the trial court for the purpose of holding a hearing in conformity with Criminal Rule 35(b).[1] Originally appellant was tried upon a three-count indictment. After the state had presented its case in chief and appellant had testified, appellant withdrew his not-guilty plea to a forgery count and pled guilty thereto. At the time this matter was initially before us appellant had claimed

> that he was coerced into withdrawing his plea of not guilty and entering a plea of guilty by his court appointed counsel, who threatened to withdraw if this was not done, at the same time assuring him that if he did so he (counsel) would guarantee that the probation officer would recommend probation.[2]

In our opinion we concluded that these assertions raised an issue of fact which could not be "resolved in an appeal and which should have been determined in an acceptable manner by the trial court."[3]

1. Thompson v. State, 412 P.2d 628 (Alaska 1966).

2. Id. at 635.

3. Id. We also suggested to the trial court that at the hearing which was to be held pursuant to our remand
 the proceeding be expanded sufficiently to create a record upon which specific findings can be made upon as many of the following matters as may be applicable, in addition to any others that

may be raised by appellant: (1) Did the court have jurisdiction; (2) Was the plea of guilty voluntarily made; (3) Was petitioner adequately represented by competent counsel at time of plea or at his trial; (4) If petitioner was not represented by counsel at time of plea, did he intelligently waive counsel after full explanation by the court as to his right to have counsel appointed and the importance of counsel to him; (5) Was there any suppression of evidence or

Upon remand, the superior court appointed counsel for appellant and entered an order enabling appellant to be present at the hearing.

After hearing testimony from appellant, appellant's previous court-appointed trial counsel, and the Youth and Adult Authority's probation officer who authored the presentence report which had been ordered in regard to the sentencing of appellant, the trial court filed findings of fact as required by our mandate.

As to appellant's assertions of threatened withdrawal from the case, as well as guarantee of probation by Robert Libbey, appellant's court-appointed trial counsel, the superior court found that

Mr. Libbey did not threaten to withdraw from the case.[4]

* * * He did not promise Thompson that he would obtain probation for him, although he did inform Thompson that he would do everything he could in that direction.

It has been pointed out that Thompson had previously been advised that his chances for probation were dim in view of his record. Thompson was perfectly

capable of making his own decision, and I find that he did.

* * * Thompson was perfectly aware of how the matter stood and of his chances for probation at the time he entered his plea. He was not coerced by his attorney nor was he confused. I find nothing improper in the conduct of Mr. Libbey, whom * * * I find to have been completely honest and candid with his client * * *.

 Our review of the entire record of the hearing held on remand has led us to the conclusion that the superior court's findings which pertain to Mr. Libbey's purported withdrawal and his alleged guarantee of probation are amply supported by the record. We, therefore, affirm the superior court's findings and conclusions to the effect that appellant's change of plea to guilty was made voluntarily and with understanding of the nature of the charge.[5] We are of the opinion that the record discloses a sufficient factual basis for the trial court's acceptance of appellant's guilty plea.[6] We are also of the view that the record establishes that appellant was fully aware of the conse-

knowing use of perjured testimony by the prosecuting attorney; (6) Were any confessions used which were not voluntarily made or illegally obtained; (7) Was petitioner mentally competent, able to understand the nature of the proceedings and to cooperate with counsel at all stages of the proceedings; and (8) Was the sentence within the statutory range.
Id. at 637.

4. In this regard the trial court further found that:
Prior to the trial, he [Mr. Libbey] felt that the petitioner ought to stand trial since it was unlikely in view of his record, he would be granted probation in the event of a plea of guilty, and the petitioner was so informed.
As the evidence unfolded, Mr. Libbey frankly advised the petitioner of how the case stood against him. The petitioner testified against the advice of his attorney and made some incriminating statements. At this juncture, the attorney told his client that he felt the forgery

count had been established and [the] jury might well find him guilty of the additional counts of burglary and larceny. The attorney advised him to enter a plea to the forgery count.

5. Crim.R. 11 provides in part that:
The court may refuse to accept a plea of guilty, and shall not accept such plea without first determining that the plea is made voluntarily with understanding of the nature of the charge.
See Oughton v. State, 420 P.2d 452 (Alaska 1966).

6. In his findings the trial judge stated in part:
During the trial of the case, it was established by the defendant's own testimony that defendant admitted making the forged instrument on which Count I of the indictment was laid. It was also established by his own testimony that he accompanied Adele Majors to Caribou's Department Store for the purpose of cashing the forged instrument.

quences of his guilty plea.[7] The fact that a plea of guilty was entered because of the possibility of obtaining a more lenient sentence does not make such a plea an involuntary one.[8]

We note that appellant's counsel [9] in this appeal has not briefed the question of the voluntariness of appellant's plea of guilty.[10] Nevertheless, because this issue resulted in our original remand and was the focal

7. The record concerning the time appellant's plea of guilty was entered discloses the following:

THE COURT: Mr. Libbey has indicated to me that you desire to withdraw a plea of not guilty to Count I and enter a plea of guilty at this time, is this correct?

MR. THOMPSON: Yes, that's right.

THE COURT: You realize that by so doing that I may impose any sentence authorized by law, regardless of any recommendations made here by the District Attorney, the Youth and Adult Authority as a—presentence investigation, your own attorney or yourself?

MR. THOMPSON: Yes.

After alluding to this portion of the prior record and after reviewing the testimony which had been produced on this issue at the remand hearing, the trial court then concluded in his findings that:

The testimony, as I have evaluated it, and the circumstances lead me to the conclusion that Thompson was perfectly aware of how the matter stood and of his chances for probation at the time he entered his plea.

8. 8 Moore, Federal Practice § 11.05 [4] (2d ed. 1966), citing Shelton v. United States, 246 F.2d 571, 572 (5th Cir. 1957), rev'd on other grounds, 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed.2d 579 (1958); Cooper v. Holman, 356 F.2d 82, 85 (5th Cir.), cert. denied, 385 U.S. 855, 87 S.Ct. 103, 17 L.Ed.2d 83 (1966); Cortez v. United States, 337 F.2d 699, 701 (9th Cir. 1964), cert. denied, 381 U.S. 953, 85 S.Ct. 1811, 14 L.Ed.2d 726 (1965), where the court stated:

We take judicial notice of the fact that the vast majority of those who are indicted for federal crimes plead guilty. We know, too, that in many of the cases where this occurs the plea will be to one count, or less than all counts, of a multicount indictment, or to a lesser offense than that originally charged. In a sense, it can be said that most guilty pleas are the result of a 'bargain' with the prosecutor. But this, standing alone, does not vitiate such pleas. A guilty defendant must always weigh the possibility of his conviction on all counts, and the possibility of his getting the maximum sentence, against the possibility that he can plead to fewer, or lesser, offenses, and perhaps receive a lighter sentence. The latter possibility exists if he pleads guilty, as Cortez did, to the whole charge against him.

\* \* \* \* \* \*

The important thing is not that there shall be no 'deal' or 'bargain', but that the plea shall be a genuine one, by a defendant who is guilty; one who understands his situation, his rights, and the consequences of the plea, and is neither deceived nor coerced.

See Kent v. United States, 272 F.2d 795 (1st Cir. 1959).

9. This court retained jurisdiction of the original appeal under the terms of our mandate which remanded the case to the superior court for a full factual hearing pursuant to Criminal Rule 35(b). Upon completion of the hearing in the superior court, we determined that counsel should be appointed for appellant for the purpose of representing him in regard to further appellate proceedings before this court.

10. The questions which appellant's counsel now seeks to raise in this appeal are as follows:

Is a guilty plea in Alaska acceptable when the state's evidence, even if believed, is insufficient to sustain a conviction of the crime charged?

May an assistant District Attorney legally sign an indictment allegedly returned by the Grand Jury against a defendant at the time of the arraignment?

Must court appointed trial counsel in a criminal case serve throughout the case until appropriately relieved by the trial court?

Should the superior court hold a hearing when the accused moves for suppression of evidence at the time of the trial in order to ascertain whether said motion has merit?

May a superior court judge admit into evidence an exhibit of the State's, when the state has at no time offered said exhibit?

Is it proper for officers of the State Youth and Adult Authority in making presentence reports to question defendants with regard to charges that were dismissed or of which they were acquitted?

point of the hearing that was held upon remand, we considered it appropriate to discuss this question.

■■ We find it unnecessary to decide all of the issues which appellant now seeks to raise. It is a well established rule that in the circumstance where a defendant, who is adequately represented by counsel, voluntarily and knowingly pleads guilty, this act constitutes a waiver of all non-jurisdictional defenses.[11] The only other question which we consider to be properly before us, in light of the foregoing rule and the record which was produced at the remand hearing, is appellant's assertion that it was improper conduct on the part of the Youth and Adult Authority's probation officer to question appellant with regard to the two charges against appellant which were dismissed when appellant changed his plea to the forgery count to that of guilty.

Criminal Rule 32(c) which pertains to presentence investigations and reports provides:

*When Made.* The probation service of the court shall make a pre-sentence investigation and report to the court before the imposition of sentence or the granting of probation unless the court otherwise directs. The report shall not be submitted to the court or its contents disclosed to anyone unless the defendant has pleaded guilty or has been found guilty.

*Report.* The report of the pre-sentence investigation shall contain any prior criminal record of the defendant and such information about his characteristics, his financial condition, and the circumstances affecting his behavior as may be helpful in imposing sentence or in granting probation or in the correctional treatment of the defendant, and such other information as may be required by the court.

Here the record discloses that after appellant had changed his plea the trial court ordered a presentence investigation to be made and a presentence report to be filed. During the course of his investigation, a probation officer of the Youth and Adult Authority of the State of Alaska questioned appellant concerning his involvement in the two charges which had been dismissed. The presentence report which was filed contained reference to appellant's admissions of guilt as to the two dismissed charges. Appellant contends that both the questioning referred to above and the inclusion of the responses elicited from appellant, concerning the dismissed charges, in the presentence report constituted error.[12]

We hold that under the circumstances appearing in this record nothing which occurred during the presentence investigation, nor any portion of the text of the presentence report which was filed, requires the setting aside of appellant's sentence. Here appellant's trial counsel was

11. United States ex rel. Pizarro v. Fay, 353 F.2d 726 (2d Cir. 1965); United States ex rel. Glenn v. McMann, 349 F.2d 1018 (2d Cir. 1965), cert. denied, 383 U.S. 915, 86 S.Ct. 906, 15 L.Ed.2d 669 (1966); Davis v. United States, 347 F.2d 374 (9th Cir. 1965); United States v. Parker, 292 F.2d 2 (6th Cir. 1961); State of Louisiana ex rel. Davis v. Allgood, 256 F.Supp. 301, 303 (E.D.La.1966).

12. Appellant argues that the actions of the probation officer constituted error because (1) although the court may consider the defendant's prior criminal record, the Rule is specific; it refers to *a criminal record.* Dismissal of charges by a court for lack of evidence, or acquittal itself are not found in one's criminal record; (2) it completely ignores the jury's findings as the trier of the facts under appropriate instructions on the law from the trial judge, and allows a probation officer to become the 13th juror with vast powers; (3) it completely discourages the advocacy system used in Alaska, if it allows a probation officer to make recommendations upon assumptions he has made and answers that may have been given to him, because that is all he would take for an answer; (4) it goes far beyond the reason for the rule behind presentence investigations and reports in the first place, and encourages the impartial investigator to become an arm of the prosecution, and (5) it deprives a defendant of due process of law and places him in a Star Chamber before a one man judge.

given the opportunity to read the presentence report before appellant was sentenced. No objection was raised to the factual content thereof. We believe that appellant's attack on the presentence investigation and report are disposed of by the rationale of the following cases which we find persuasive.

In Williams v. People of State of New York [13] the defendant was convicted of first degree murder and the jury recommended a life sentence. In imposing the death penalty the trial judge stated that a presentence investigation had revealed factors which persuaded him that the death penalty was called for. Among these factors referred to was the appellant's experience in approximately thirty other burglaries. The appellant had not been convicted of these burglaries, but the judge had information that he had confessed to some and had been identified as the perpetrator of others.

The attack on the sentence was based on a denial of due process in that the appellant had not been afforded an opportunity to confront those that had accused him of these other burglaries. In affirming, the Supreme Court of the United States said:

A sentencing judge, however, is not confined to the narrow issue of guilt. His task within fixed statutory or constitutional limits is to determine the type and extent of punishment after the issue of guilt has been determined. Highly relevant—if not essential—to his selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics. And modern concepts individualizing punishment have made it all the more necessary that a sentencing judge not be denied an opportunity to obtain pertinent information by a requirement of rigid adherence to restrictive rules of evidence properly applicable to the trial.[14]

United States v. Doyle [15] presented a factual situation closely related to the circumstances of the case at bar. There the defendant was indicted on eleven counts of violation of the Securities Act. After a plea of guilty to a single count, the remaining counts were dismissed. The presentence report which was submitted indicated that the defendant was guilty of the charges which had been dismissed. In upholding defendant's conviction the court wrote:

The dismissal of the other counts at the Government's request was not an adjudication against it on the merits, even though, as a result of the statute of limitations, no further prosecution can occur for the offenses there charged. The aim of the sentencing court is to acquire a thorough acquaintance with the character and history of the man before it. Its synopsis should include the unfavorable, as well as the favorable, data, and few things could be so relevant as other criminal activity of the defendant, particularly activity closely related to the crime at hand. Counsel suggests that although a 'criminal record' may be considered, crimes not passed on by a court are beyond the pale, but we see nothing to warrant this distinction. * * * Of necessity, much of the information garnered by the probation officer will be hearsay and will doubtless be discounted accordingly, but the very object of the process is scope and the defendant is always guarded by the statutory maximum. To argue that the presumption of innocence is affronted by considering unproved criminal activity is as implausible as taking the double jeopardy clause to bar reference to past convictions.[16]

---

13. 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949).

14. Id. at 247, 69 S.Ct. at 1083, 93 L.Ed. at 1342 (footnote omitted).

15. 348 F.2d 715, 721 (2d Cir.), cert. denied, 382 U.S. 843, 86 S.Ct. 89, 15 L.Ed.2d 84 (1965).

16. See Jones v. United States, 113 U.S. App.D.C. 233, 307 F.2d 190, 192 (1962), cert. denied, 372 U.S. 919, 83 S.Ct. 733, 9 L.Ed.2d 724 (1963).

In light of the foregoing, we affirm the superior court's denial of appellant's Criminal Rule 35(b) motion to vacate the judgment and commitment entered in this case.