**Jack P. FAULKNER, Appellant,**

**v.**

**STATE of Alaska, Appellee.**

**No. 885.**

Supreme Court of Alaska.

Oct. 14, 1968.

Warren W. Matthews, Jr., Burr, Boney & Pease, Anchorage, for appellant.

Edgar Paul Boyko, Atty. Gen., Juneau, Douglas B. Baily, Dist. Atty., Mark C. Rowland, Asst. Dist. Atty., Anchorage, for appellee.

OPINION

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

DIMOND, Justice.

Appellant was indicted on seven counts of drawing checks with insufficient funds with intent to defraud in violation of AS 11.20.230,[1] and one count of issuing a check

---

1. AS 11.20.230 provides:
   *Drawing of check with insufficient funds.* A person who, with intent to defraud, makes, draws, utters or delivers to another person a check or draft on a bank or other depository for the

without funds or credit in violation of AS 11.20.210.[2] Appellant entered pleas of guilty to all eight counts. The superior court sentenced him to five years imprisonment on each of the seven counts involving a violation of AS 11.20.230 and one year on the count involving a violation of AS 11.20.210. The sentences were ordered to run consecutively—for an aggregate sentence of 36 years. The court also recommended that the parole board not consider appellant for parole until he had served at least five years of his sentence.

Appellant contends on this appeal that the sentence was excessive and constituted cruel and unusual punishment, that the superior court erred in relying on a Youth & Adult Authority pre-sentence report which contained material misrepresentations, and that the court erred in denying appellant's motion in arrest of judgment and to set aside judgment in that three counts of the indictment failed to state a crime.

In Bear v. State[3] we held that we do not have the authority to review and revise a criminal sentence for abuse of discretion. That case disposes of appellant's contention that under our general appellate jurisdiction we have the authority to modify a sentence on appeal for an abuse of discretion of the sentencing court.

Appellant also contends, however, that the sentence is so excessive in relation to the crimes committed that it represents the infliction of cruel and unusual punishment contrary to the prohibitions contained in the federal and state constitutions.[4] We did not rule upon this point in the *Bear* case. We do so now.

There is some authority for the proposition that it is possible for a sentence within statutory limits to be so disproportionate to the offense committed as to constitute cruel and unusual punishment.[5] However, a majority of the jurisdictions, federal and state, hold the opposite.[6] The Supreme

payment of money, knowing at the time of the drawing or delivery that he does not have sufficient funds or credit with the bank or depository to meet the check or draft in full upon its presentation is guilty of larceny.

2. AS 11.20.210 provides in part:
(1) A person is guilty of a misdemeanor * * * if he * * * makes, draws, utters, or delivers a check, draft or order drawn upon a bank or other depository, for payment of money, knowing at the time of the making, drawing, uttering or delivering that the maker or drawer does not have sufficient funds or credit with the bank or other depository for its payment in full, upon presentation, and without informing the payee or the person to whom it is delivered, at the time of the making, uttering, drawing or delivery of it, that the person making, drawing, uttering or delivering the check, draft, or order does not have sufficient funds or credit with the bank or other depository for its payment in full, upon presentation; * * *

3. 439 P.2d 432 (Alaska 1968).

4. The eighth amendment to the United States Constitution provides:
Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

Alaska constitution, art. I, § 12 provides:
Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted. Penal administration shall be based on the principle of reformation and upon the need for protecting the public.

5. Weems v. United States, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910); Barber v. Gladden, 210 Or. 46, 309 P.2d 192, 196 (1957), cert. denied, 359 U.S. 948, 79 S.Ct. 732, 3 L.Ed.2d 681 (1959); State v. Ross, 55 Or. 450, 104 P. 596, 604–605 (1909), modified, 55 Or. 450, 106 P. 1022 (1910), dismissed, 227 U.S. 150, 33 S.Ct. 220, 57 L.Ed. 458 (1913); State v. Kimbrough, 212 S.C. 348, 46 S.E.2d 273, 277 (1948).

6. Overstreet v. United States, 367 F.2d 83 (5th Cir. 1966); Lindsey v. United States, 332 F.2d 688–693 (9th Cir. 1964); Martin v. United States, 317 F.2d 753, 755 (9th Cir. 1963); Akers v. United States, 280 F.2d 198, 199 (6th Cir.), cert. denied, 364 U.S. 924, 81 S.Ct. 289, 5 L.Ed. 2d 262 (1960); Smith v. United States, 273 F.2d 462, 467–468 (10th Cir. 1959), cert. denied, 363 U.S. 846, 80 S.Ct. 1619, 4 L.Ed.2d 1729 (1960); State v. McNally, 152 Conn. 598, 211 A.2d 162, 164, cert. denied, McNally v. Connecticut, 382 U.S. 948, 86 S.Ct. 410, 15 L.Ed.2d 356 (1965); Chavigny v. State, 112 So.2d 910, 915

Court of Connecticut, for example, has said:

> When the objection is to the sentence and not to the statute under which the sentence was imposed, the sentence is not cruel or unusual if it is in conformity with the limit fixed by statute. When the statute does not violate the constitution, any punishment which conforms to it cannot be adjudged excessive since it is within the power of the legislature and not the judiciary to determine the extent of the punishment which may be imposed on those convicted of crime.[7]

And the Florida Court of Appeals has put the matter this way:

> The rationale of this rule is that * * * if the statute does not violate the Constitution, then any punishment set in conformity to it cannot be adjudged excessive for the reason that it is not within judicial but legislative power, controlled only by constitutional provisions, to declare what punishment may be assessed against those convicted of crime.[8]

 ▮ I have no quarrel with the proposition that it is within the power of the legislature and not the judiciary to determine what punishment may be assessed against those convicted of crime. But such a power is subject to constitutional limitations, and it is this court's function to determine whether such limitations have been exceeded.[9] I would adopt what appears to be the minority view that the bare fact that a sentence is within the maximum prescribed by the legislature does not prevent it from violating the constitutional ban against cruel and unusual punishment.[10] I recognize the fact that ordinarily a sentence with statutory limits should not be disturbed. But I also believe that it is conceivable that in extraordinary circumstances a sentence, although within the limits prescribed by law, may be so "disproportionate to the offense committed as to be completely arbitrary and shocking to the sense of justice,"[11] and thus would amount to an unconstitutional cruel and unusual punishment.

 ▮ That, I believe, is the situation here. It is a precept of justice that punishment for crime should be graduated in proportion to the offense.[12] I believe that that precept has not been followed in this case. Appellant wrote eight bad checks totalling $1,384.35. The largest check written and the largest monetary loss suffered by any one person was $375. There is here what in essence amounts to a single spree of passing bad checks which, according to the indictment, took place in a single day. A sentence of 36 years for this activity is in my opinion not proportionate to the offense. The offense is not of sufficient gravity to justify imposing what amounts

(Fla.App.1959), cert. denied, 362 U.S. 922, 80 S.Ct. 676, 4 L.Ed.2d 742 (1960); Curtis v. State, 102 Ga.App. 790, 118 S.E. 2d 264 (1960); King v. State, 91 Idaho 97, 416 P.2d 44, 45 (1966); People v. Calcaterra, 33 Ill.2d 541, 213 N.E.2d 270, 274 (1965), dismissed, 385 U.S. 7, 87 S.Ct. 65, 17 L.Ed.2d 8 (1966); Monson v. Commonwealth, 294 S.W.2d 78, 80 (Ky. 1956); Bond v. State, 249 Miss. 352, 162 So.2d 510, 512 (1964); State v. Wishom, 416 S.W.2d 921, 927 (Mo.1967); State v. Thompson, 414 S.W.2d 261, 268 (Mo.1967).

7. State v. McNally, 152 Conn. 598, 211 A. 2d 162, 164, cert. denied, McNally v. Connecticut, 382 U.S. 948, 86 S.Ct. 410, 15 L.Ed.2d 356 (1965).

8. Chavigny v. State, 112 So.2d 910, 915 (Fla.App.1959), cert. denied, 362 U.S. 922, 80 S.Ct. 676, 4 L.Ed.2d 742 (1960).

9. Workman v. Commonwealth, 429 S.W. .2d 374 (Ky.Ct.App.1968).

10. Barber v. Gladden, 210 Or. 46, 309 P. 2d 192, 196 (1957), cert. denied, 359 U.S. 948, 79 S.Ct. 732, 3 L.Ed.2d 681 (1959).

11. Green v. State, 390 P.2d 433, 435 (Alaska 1964). See also Weems v. United States, 217 U.S. 349, 367, 30 S.Ct. 544, 54 L.Ed. 793, 798 (1910); Hedrick v. United States, 357 F.2d 121, 124 (10th Cir. 1966).

12. Weems v. United States, 217 U.S. 349, 367, 30 S.Ct. 544, 54 L.Ed. 793, 798 (1910).

to a life sentence on appellant.[13]  I am not unaware of appellant's criminal record.[14] But I believe that even with appellant's history of criminal activity a sentence of such severity is not justified.  I conclude that within the meaning of our statement in Green v. State [15] that the punishment inflicted in this case is so disproportionate to the offenses committed as to be completely arbitrary and shocking to the sense of justice and thus amounts to cruel and unusual punishment prohibited by the federal and state constitutions.  The sentences of the court below should be vacated and the case remanded for resentencing.

The Chief Justice's view that the sentence imposed does not constitute cruel and unusual punishment is based mainly on the assumption that at some undesignated time, perhaps in less than one year, appellant will become eligible for and will be released on parole.  This is pure assumption and nothing else.  It can just as properly be assumed that he will not be paroled.  In fact the latter assumption has more basis in probability than the one made in the dissent.  Appellant's "bad" record or proclivity for crime, which the dissent relies upon to justify the imposition of a 36 year sentence, is the very factor that might well convince the parole board that appellant is a bad parole risk and should not be released until he has served his entire sentence.

The dissent states that "The original sentence imposed by the judge was, in effect, a sentence of 0–36 years."  This statement implies that Alaska operates under a system of indeterminate sentencing, which it does not.  The sentence imposed was 36 years, and not something less than that. As I have pointed out, whether the time that appellant must actually serve will be 36 years or something less, depending on action by the parole board, is something that cannot be determined by the sentencing court or by this court.  The fact that appellant may have to serve the whole 36 year sentence causes the sentence imposed to violate the constitutional ban against cruel and unusual punishment.

Another aspect of the sentence requires our consideration.  Judgment was entered and sentence imposed on May 11, 1967. Under AS 33.15.180 [16] appellant would have been eligible for parole at any time thereafter, in the discretion of the board of parole.  However, on June 29, 1967, the court held a hearing on a motion for reduction of sentence, at the conclusion of which it amended the judgment by providing that the board of parole should not consider parole until appellant "has served at least 5 years of his sentence."

■ Under AS 33.15.230(a) (1) the sentencing judge may have placed such a limitation on appellant's eligibility for parole had he done so at the time judgment was entered.[17]  He was not permitted to do so

13. Appellant was about 46 years of age when he was sentenced.  If he served the 36 years imposed he would be 82 when released.

14. The probation officer's pre-sentence report to the court showed that appellant had prior convictions for the offenses of grand larceny, interstate transportation of a stolen vehicle, and concealing and removing mortgaged property.

15. 390 P.2d 433, 435 (Alaska 1964).

16. AS 33.15.180 provides:
*Persons eligible for parole.* A state prisoner, other than a juvenile delinquent, wherever confined and serving a definite term of over 180 days, whose record shows that he has observed the rules of the institution in which he is

confined may, in the discretion of the board, be released on parole.

17. AS 33.15.230(a) (1) provides:
*Upon entering a judgment of conviction,* the court having jurisdiction to impose sentence, when in its opinion the ends of justice and best interests of the public require that the defendant be sentenced to imprisonment for a term exceeding one year, may
    (1) designate in the sentence of imprisonment imposed a minimum term at the expiration of which the prisoner is eligible for parole, which term may be less than, but shall not be more than one-third of the maximum sentence imposed by the court * * *. [Emphasis added.]

after that time. The effect of the amendment to the judgment was to increase the severity of appellant's sentence. This may not be done under Criminal Rule 35(a) [18] because the rule permits only the reduction, and not an increase of sentence. Furthermore, when judgment was entered on May 11, 1967, and appellant then started service of his sentence, he was in jeopardy in the constitutional sense. Thereafter, "the prohibition of the Fifth Amendment against double jeopardy prevented his being recalled for vacation of the legal sentence and the administration of a more severe one." [19] The amended sentence was therefore illegal. Upon remand the provision that the board of parole should not consider parole until appellant had served at least 5 years of his sentence should be stricken from the judgment.

In a pre-sentence report filed by the Youth & Adult Authority's probation officer it was stated that two unnamed persons had indicated that in their opinion appellant "was going through the motions of attempting to treat himself for an alleged alcoholic program, in an effort to impress the court." In addition, with respect to the checks which were the subject of the indictments in this case, the report stated: "In addition to these checks, totalling some $3,000, the defendant wrote an unknown number of bad checks in Washington, Oregon and Idaho during his unlawful flight to avoid prosecution here." Appellant contends that these statements were material misrepresentations of fact and that the judge erred in relying upon them in deciding what sentence to impose.

We pointed out in Thompson v. State [20] that it is the aim of a sentencing court to acquire a thorough acquaintance with the character and history of the man before it, and that it was essential to the selection of an appropriate sentence for the judge to have possession of the fullest information possible concerning a defendant's life and characteristics. Of necessity much of the information gathered by the probation officer and placed in the pre-sentence report will be hearsay and not verified by evidence of the facts stated. But we believe that such information will accordingly be discounted by the judge and we do not presume that he will be prejudiced by such information. As we stated in Egelak v. State: [21] "Again, we reiterate our belief that the trial judge is equipped to recognize and discount any attempts at unfairness or overreaching in a presentence report." We find no error here.

In seven of the eight counts of the indictment appellant was charged with violation of AS 11.20.230 which provides as follows:

*Drawing of check with insufficient funds.*

A person who, with intent to defraud, makes, draws, utters or delivers to another person a check or draft on a bank or other depository for the payment of money, knowing at the time of the drawing or delivery that he does not have sufficient funds or credit with the bank or depository to meet the check or draft in full upon its presentation is guilty of larceny.

Appellant contends that since the instruments attached to counts five, six, and eight of the indictment do not designate a payee, they were not "checks" within the meaning of the foregoing statute, and therefore these counts of the indictment are insufficient in that they fail to state a crime.

18. Crim.R. 35(a) provides:
*Correction or Reduction of Sentence.*
The court may correct an illegal sentence at any time. The court may reduce a sentence within 60 days after the sentence is imposed, or within 60 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 60 days after receipt of an order of the supreme court of the stage or of the United States denying an application for relief.

19. United States v. Adams, 362 F.2d 210, 211 (6th Cir. 1966). See also United States v. Benz, 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354 (1931).

20. 426 P.2d 995, 1000 (Alaska 1967).

21. 438 P.2d 712, 718 (Alaska 1968).

AS 45.05.252 (§ 3–104 of the Uniform Commercial Code) states:

*Form of negotiable instruments: "draft"; "check"; "certificate of deposit"; "note."* (a) A writing to be a negotiable instrument within §§ 246–402 of this chapter, must

(1) be signed by the maker or drawer;

(2) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation, or power given by the maker or drawer except as authorized by §§ 246–402 of this chapter;

(3) be payable on demand or at a definite time; and

(4) be payable to order or to bearer.

(b) A writing which complies with the requirements of this section is

\*　　\*　　\*　　\*　　\*　　\*

(2) a "check" if it is a draft drawn on a bank and payable on demand \* \* \*.

AS 45.05.266 (§ 3–111 of the Uniform Commercial Code) provides:

*Payable to bearer.* An instrument is payable to bearer if by its terms it is payable to

(1) bearer or the order of bearer;

(2) a specified person or bearer; or

(3) "cash" or the order of "cash," or any other indication which does not purport to designate a specific payee.

The official comment to the Uniform Commercial Code states that subdivision (3) of the foregoing section of the code was

rewarded to remove any possible implication that "Pay to the order of ————————" makes the instrument payable to bearer. It is an incomplete order instrument, and falls within Section 3–115.[22]

■ The appropriate sections of the Uniform Commercial Code must be looked to in order to determine the meaning of the word "check" as used in the larceny statute, AS 11.20.230. Although the instruments in question were drafts drawn on a bank and payable on demand, they named no payees and under AS 45.05.266 were not payable to bearer. Not being payable either to order or to bearer, they do not comply with the requirements of AS 45.05.252(4), and therefore under that section of the code do not constitute checks. Appellant contends that since the instruments in question were not checks within the meaning of AS 45.05.252, they were not the subject of the crime of larceny by check under AS 11.20.230, and therefore the three counts of the indictment with respect to such instruments failed to state a crime.

Another provision of the Uniform Commercial Code must be considered. AS 45.-05.402 (Uniform Commercial Code § 3–805) states:

Sections 246–402 of this chapter apply to an instrument whose terms do not preclude transfer and which is otherwise negotiable within §§ 246–402 of this chapter but which is not payable to order or to bearer, except that there can be no holder in due course of such an instrument.

The official comment explains this section as follows:

This section covers the "non-negotiable instrument." As it has been used by most courts, this term has been a technical one of art. It does not refer to a writing, such as a note containing an express condition, which is not negotiable and is entirely outside of the scope of this Article and to be treated as a simple contract. It refers to a particular type of instrument which meets all requirements as to form of a negotiable instrument except that it is not payable to order or to bearer. The typical ex-

---

22. AS 45.05.274 (§ 3–115 of the UCC) provides:

(a) If a paper whose contents at the time of signing show that it is intended to become an instrument is signed while still incomplete in a necessary respect, it cannot be enforced until completed, but when it is completed in accordance with authority given it is effective as completed.

ample is the check reading merely "Pay John Doe."

Such a check is not a negotiable instrument under this Article. At the same time it is still a check, a mercantile specialty which differs in many respects from a simple contract. Commercial and banking practice treats it as a check, and a long line of decisions before and after the original Act have made it clear that it is subject to the law merchant as distinguished from ordinary contract law * * *.

In short, the "non-negotiable instrument" is treated as a negotiable instrument, so far as its form permits. Since it lacks words of negotiability there can be no holder in due course of such an instrument, and any provision of any section of this Article peculiar to a holder in due course cannot apply to it. With this exception, such instruments are covered in all sections of this Article.[23]

■ The instruments involved here, not being payable to order or to bearer, were non-negotiable in the sense that no one could be a holder in due course of such instruments. But they are treated as negotiable instruments in other respects and are referred to as checks. Being checks within the meaning of the Uniform Commercial Code, such instruments were the subject of the crime of larceny by check under AS 11.20.230, and therefore the three counts of the indictment with respect to these instruments did not fail to state the crime.

The case is remanded to the superior court with instructions to vacate the sentences imposed and to resentence appellant.

RABINOWITZ, Justice (concurring).

I agree that the case should be remanded to the superior court with instructions to vacate the 36-year sentence which was imposed and to resentence appellant.

■ In dissenting in Bear v. State[1] I explained my belief that under article IV, section 2 of the Alaska constitution this court is empowered to review the merits of a criminal sentence, the term of which is within the statutory limitations imposed by the legislature.[2] Adhering to the views which I expressed in *Bear*, I am of the opinion this court has the jurisdiction to review the 36–year sentence which the trial judge, in the exercise of his sentencing discretion, considered appropriate in the case at bar. I reiterate my belief that sentencing is a discretionary judicial function and that it is the province of the judiciary itself, not the executive branch of our government, to correct abuses of such discretion.[3]

■ Study of the entire record has convinced me that the sentence appellant received is excessive. Further, at no point in the record does it appear that the trial judge ascertained if there was a factual basis for the entry of the guilty pleas.[4] In other words, the record reflects that the trial judge was completely uninformed as to the circumstances surrounding the making, issuing, and acceptances of the eight separate checks which totaled $1,384.35. Left unexplained is the fact that only one of the checks was dated July 9, 1966, the date upon which the government alleged the eight separate offenses occurred. The record also contains some rather inconclusive and conflicting references to alcohol, appellant's intoxication, and the role that alcohol played in the events which are purported to have occurred on July 9, 1966.

Additionally, I am of the view that appellant's prior criminal record does not

23. 1 Anderson, Uniform Commercial Code, at 761–62 (1961).

1. 439 P.2d 432 (Alaska 1968).

2. In the course of my dissent I cited and relied upon the following precedents of this court: Egelak v. State, 438 P.2d 712 (Alaska 1968); Thompson v. State, 426 P.2d 995, 999 (Alaska 1967); Battese v. State, 425 P.2d 606, 611 (Alaska 1967); State v. Pete, 420 P.2d 338 (Alaska 1966).

3. Bear v. State, 439 P.2d 432, 440 n. 32 (Alaska 1968).

4. Knaub v. State, 443 P.2d 44, 51 n. 21 (Alaska 1968); Thompson v. State, 426 P.2d 995, 997 (Alaska 1967).

furnish justification for the remarkably long sentence which he received. Nothing in regard to the nature of these particular check offenses, the surrounding circumstances, or appellant's past history warranted depriving this 46-year-old human being of his liberty for a period of 36 years. What is involved here is an offense against property in the total amount of $1,384.35. Here we are not concerned with homicide or physical harm or injury to another person.

In my view, this case dramatically indicates a certain pathology in sentencing and, by comparison, reflects the existence of wide disparity in sentencing. Equally forcefully demonstrated is the need for this court to exercise its appellate jurisdiction in review of judicial sentencing in order to attempt to develop appropriate sentencing standards, and to insure that justice is obtained through adherence to the constitutional mandate which requires that the administration of criminal justice in Alaska be based upon the "principle of reformation and upon the need for protecting the public." [5]

I do not think that attainment of these goals can be advanced by viewing Alaska's felony statutes as providing for indeterminate sentencing.[6] Nor do I believe that this court should abdicate its review responsibilities because of the fact that every felony prisoner is eligible for parole on the very first day of his incarceration regardless of the length of sentence imposed.[7] It is obvious that determination of an appropriate sentence involves the judicious balancing of many and ofttimes competing factors. Just as apparent to me is the observation that primacy cannot be ascribed

to any particular factor. Yet in reviewing this record in light of the type of offenses which were involved, what information we do have as to the surrounding circumstances, and appellant's prior life history, I am not convinced that the length of the sentence imposed was appropriate. It does not convincingly appear to me that the principle of public protection requires appellant's potential incarceration for 36 years. Admittedly, appellant's three prior violations of the law and other information concerning his life indicate that a substantial term of imprisonment is warranted in order to insure the public protection and to assist in the attempt to reform appellant. What is lacking here is any indication that we are dealing with a professional or dangerously depraved criminal. In my view, if the present sentence were to remain unaltered, any possibility of appellant's reformation would be brutally negated.

■ I concur in Chief Justice NESBETT'S view concerning the cruel and unusual punishment aspects of this appeal.

NESBETT, Chief Justice (dissenting).

■ While I agree that the trial judge's attempt to amend his original sentence was illegal, I dissent from the order, concurred in by the majority, that the sentence be vacated and the case remanded for resentencing.

Although the total of the consecutive sentences imposed in the original sentence amounted to 36 years, under Alaska's act which is similar in most respects to the usual indeterminate sentencing act, appellant could have received parole from the

---

5. Alaska Const. art. I, § 12.

6. Indeterminate sentences were authorized by SLA 1964, ch. 43, § 3 and were subsequently abolished by virtue of the provision of SLA 1965, ch. 68, §, 2.

7. It should be noted that the trial judge's modification of his original sentence to fix appellant's eligibility for parole came after appellant had filed a post-convic-

tion motion to reduce the sentence. Appellee, in its brief, states that in so doing, the trial judge went further and provided that the defendant should be eligible for parole in five years, thus at once mitigating the harshness of that sentence and placing the responsibility on the appellant to demonstrate that he can return to normal society.

Alaska Board of Parole in less than one year.[1]

The trial court was dealing with a man concededly of superior intelligence. After graduation from high school he had attended universities in Hawaii and Kansas and had eventually received a degree as an Associate of Arts. Yet during the succeeding 20 years of his life he appears to have been in continuous conflict with the law. During his military service he was court-martialed twice. In civilian life he was arrested in Boise, Idaho in June of 1952 on a charge of passing bad checks. The indicated disposition of the charge is that he was "released to ADA County." In March of 1955 he was sentenced to serve 15 years in Washington State Prison on a charge of larceny by check. He was released on parole from Washington State Prison within one year. He was arrested in Stillwater, Minnesota in July of 1958 and sentenced to 0–2 years on a charge of concealing and removing mortgaged chattel property. He served one year and four months of this sentence. In 1961 in Denver, Colorado he was sentenced to serve four years for violation of the National Motor Vehicle Transportation Act. He was released on conditional release in February of 1964 and arrested in Chicago in June of 1964 for violation of the terms of his conditional release. He was returned to the United States Penitentiary at Leavenworth in November of 1964 to serve the balance of 408 days on his sentence. He was released from Leavenworth in September of 1965. At that time he was again placed on parole by the state of Washington for his 1955 offense. Parole supervision for the state of Washington was accepted by the Illinois State Parole Authority as a courtesy. Appellant absconded parole supervision in Chicago and came to Anchorage, but was again placed on parole by the state of Washington under the parole supervision of the Alaska Youth and Adult Authority as a courtesy to the state of Washington under the provisions of the Inter-State Compact Agreement. While under the parole supervision of the Alaska Youth and Adult Authority, on or about July 9, 1966, appellant passed at least eight checks ranging in value from $45 to $233.45, totaling approximately $1,384. In addition, appellant is reported to have written a number of bad checks in the states of Washington, Idaho, and Oregon while in flight attempting to avoid prosecution for his Alaska offenses. Appellant's parole was finally revoked by the state of Washington, but proceedings have been held in abeyance until it is determined what will be done by the Alaska courts for the offenses which resulted in the sentence now under consideration by this court.

During the time appellant was confined in the Washington State Penitentiary he was givin numerous psychological tests. A portion of the summary of psychological findings states:

This man has demonstrated almost all of the pathological indicators and evidences of gross personality disruption. There is no doubt about his high native intellectual endowment, but he is using this intelligence as a bulwark against society and as a tool for self-exposition rather than as a means by which he may accomplish satisfactory adjustment. He is severely afflicted with an 'intelligence complex' and continually attempts to impress others with his superior standing.

Appellant was accorded every consideration by the trial court in Alaska. Competent counsel was appointed to represent him. Prior to the time set for trial the court ordered that a hearing be held to determine whether appellant was mentally competent to stand trial. At this hearing it was established that appellant had been seen over a period of approximately one

---

1. AS 33.15.180 states:

A state prisoner, other than a juvenile delinquent, wherever confined and serving a definite term of over 180 days, or a term the minimum of which is at least 181 days, whose record shows that he has observed the rules of the institution in which he is confined may, in the discretion of the board, be released on parole.

month by psychiatrists and psychologists. Diagnostic interviews were held, psychological tests were conducted and the opinion of the staff, reflected in the testimony of of Dr. Johnstone, was that appellant was capable of assisting in his own defense, that he knew the nature of the charges against him and was mentally competent to stand trial. After the case had been set for trial appellant then withdrew his pleas of "not guilty" and pleaded guilty to all eight counts.

In my opinion the authorities cited in the majority opinion fail completely to sustain the holding that the sentence in this case was a violation of the cruel and unusual punishment prohibition of the United States and Alaska Constitutions. Green v. State [2] is cited for the proposition that when a sentence is so "disproportionate to the offense committed as to be completely arbitrary and shocking to the sense of justice" it is a violation of the cruel and unusual punishment prohibition of the United States and Alaska Constitutions. *Green* is not authority for that proposition. The holding in *Green* was that the Alaska statutory minimum of 15 years imprisonment for second degree murder was not cruel and unusual punishment. The quoted language of *Green* is pure dicta. No question of an excessive sentence was before the court. The contention was that the *statute* inflicted cruel and unusual punishment.

The majority opinion cites Weems v. United States.[3] *Weems* stands alone in a separate legal world. There the United States Supreme Court held that a provision of the Philippine Penal Code which provided that a public official convicted of falsifying a public disbursing document must be punished by fine and imprisonment at hard and painful labor for a period ranging from 12 years and a day to 20 years, and that the prisoner, during his imprisonment, should continuously carry a

chain attached to his ankle and hanging from his wrist, and that he would be deprived during the term of his imprisonment of all civil rights, and was perpetually and absolutely disqualified to enjoy any political rights or to hold office, and was, in effect, placed on parole for the balance of his life, was a violation of the Philippine Bill of Rights, which was identical to the Eighth Amendment to the United States Constitution prohibiting cruel and unusual punishment. Again, as in *Green,* the question was whether or not the *statute* violated the prohibition against cruel and unusual punishment.

Hedrick v. United States [4] is also cited as authority for the proposition propounded. *Hedrick* is not authority for the proposition. There the court applied the general rule that a sentence within the limits of a valid statute does not constitute cruel and unusual punishment, citing Smith v. United States, 273 F.2d 462 (10th Cir. 1959).

The United States Supreme Court has had numerous opportunities to apply the cruel and unusual punishment prohibition of the United States Constitution in fact situations similar to the one before us since it decided *Weems* in 1910, but has not done so. In Gore v. United States [5] the defendant was convicted of having violated, by a single sale of narcotics, sections of the Internal Revenue Code and the Narcotic Drugs Import and Export Act. The District Court imposed sentences for each violation as a separate offense, the sentences to run consecutively. A majority of the court held that allowing multiple punishment did not violate the constitutional prohibition against double jeopardy. No mention was made of the constitutional prohibition against cruel and unusual punishment. The dissenting opinions of Chief Justice Warren and Justices Douglas and Brennan explored the constitutionality of the sentence but made no mention of the

2. 390 P.2d 433, 435 (Alaska 1964).

3. 217 U.S. 349, 367, 30 S.Ct. 544, 54 L.Ed. 793, 798 (1910).

4. 357 F.2d 121, 124 (10th Cir. 1966).

5. 357 U.S. 386, 392, 78 S.Ct. 1280, 2 L.Ed. 2d 1405, 1410 (1958).

cruel and unusual punishment prohibition of the United States Constitution. In Harris v. United States [6] in 1959 the United States Supreme Court was again faced with the question of multiple consecutive sentences. The court reaffirmed its position in Gore v. United States.

The majority opinion herein states:

I have no quarrel with the proposition that it is within the power of the legislature and not the judiciary to determine what punishment may be assessed  *  *.

The majority opinion goes on to say, however.:

But such a [legislative] power is subject to constitutional limitations, and it is this court's function to determine whether such limitations have been exceeded.

After clearly stating that the courts will determine whether a legislative enactment is offensive to the constitution, the majority opinion then concludes:

*  *  * the bare fact that a *sentence* is within the maximum prescribed by the legislature does not prevent it from violating the constitutional ban against cruel and unusual punishment. (emphasis furnished).

The logic of the majority opinion is strained by its contention that a *sentence,* which is within the maximum prescribed by a constitutional statute, can nevertheless amount to cruel and unusual punishment. The majority opinion's reasoning appears to have derived from *Weems* where the *statute* was held to be unconstitutional, not the *sentence.* [7]

What the majority appears to be holding, without directly saying so, is that the trial judge abused his discretion in imposing cumulative sentences. This amounts to

review of a sentence for abuse of discretion which this court held it could not do in Bear v. State. [8]

The majority opinion herein states:

It is a precept of justice that punishment for crime should be graduated in proportion to the offense.

It is then contended that the trial judge failed to observe this precept.

The constitutions of some states of the United States require that the penalty shall be proportioned to the nature of the offense. [9] The Alaska Constitution does not establish any such precept. In fact it is questionable whether such a precept, in the sense that precept is defined as a commandment or rule of law, exists except in those states where it is specifically so provided in the constitution. On the other hand, it is generally conceded that the nature of the offense is one of the factors to be considered in assessing a sentence. It is by no means the only factor to be considered by the trial judge in Alaska as he attempts to determine the sentence that will assist the authorities in realizing the objective of that portion of section 12 of Article I of the Alaska Constitution, which states:

Penal administration shall be based on the principle of *reformation* and upon the need for *protecting the public.* (emphasis supplied).

I do not believe that this court has the authority to rule that punishment for a specific crime shall be graduated in proportion to the offense, to the exclusion of other factors which the trial judge must consider in assessing an appropriate sentence.

With respect to bad checks, the legislature of Alaska has already established the precept of graduating the punishment in

6. 359 U.S. 19, 22, 79 S.Ct. 560, 3 L.Ed. 2d 597, 599 (1959).

7. See 217 U.S. at 378, 30 S.Ct. 544, 54 L.Ed. at 803.

8. 439 P.2d 432 (Alaska 1968).

9. Green v. State in footnote 11 lists those states of the United States where con-

stitutional provisions require that penalties shall be proportioned to the nature of the offense as follows: Illinois, Indiana, Maine, Nebraska, New Hampshire, Oregon, Rhode Island, Vermont and West Virginia.

proportion to the offense in AS 11.20.140. If the value given for the check is less than $50, the punishment prescribed is imprisonment in jail for not less than one month nor more than one year or by a fine of not less than $25 nor more than $100. If the value of the check exceeds $50, the defendant is punishable by imprisonment in the penitentiary for not less that one year nor more that ten years. It is obvious from the record that the trial judge was aware of this statute and that he observed its requirements when he sentenced appellant. With respect to the one check which was written for less that $50 the trial judge imposed a sentence of only one year. With respect to the seven checks which exceeded $50 in amount the trial judge imposed only one-half the maximum allowable sentence for each offense and sentenced to five years on each count. The trial judge then ordered that the sentences run consecutively. This he had authority to do by reason of the provisions of AS 11.05.050.[10] The majority now holds that since the total of the checks did not exceed $1,384, and since the largest monetary loss suffered by any person was $375, and since all the checks were written on one "spree," a sentence of 36 years is not proportionate to the offense. The effect of the majority's holding is to require that the trial court consider only the facts of the particular case before it, disregarding all else that it may have learned about the accused, including his past criminal record, his propensity for committing crimes, and his eligibility for parole, and establish a sentence proportionate to the amount of monetary loss suffered by the citizens directly affected by the crimes. The precept mentioned in the majority opinion is diametrically opposed to the statutory "precept" announced by the legislature with respect to second and third repeaters where the

trial judge is admonished to consider doubling sentence, as will be pointed out later.

It is obvious that the trial court was aware of the fact that the appellant could obtain parole in less than one year; that he had been in trouble with the law on previous occasions for the writing of bad checks and was in fact still on parole to the state of Washington for that offense; that he had violated the terms of his parole or conditional release at least five times; that his personal conduct over the years had substantiated the psychological summary of the Washington State Penitentiary that he was using his intelligence as a bulwark against society and as a tool for self-exposition, rather than as a means by which he might accomplish a satisfactory adjustment. The constitutional requirement that the possibility of reforming the appellant be weighed in relation to the need to protect society established the broad perspective to to be imployed by the trial judge in fashioning a sentence. Proportioning the ultimate sentence imposed to the facts of the latest crime, in the case of a fourth repeater, is not by any means an overriding precept.

The majority and the concurring opinions both express the view that since the offense was merely one against property, the sentence imposed was excessive. The majority describes the sentence as being "what amounts to a life sentence." The concurring opinion describes it as a sentence "depriving this 46-year-old human being of his liberty for a period of 36 years." What both opinions choose to assume is that appellant will be required to actually serve a full 36 years in prison in spite of the fact that the legislature has provided by statute the means by which he could be paroled within one year. In fashioning a sentence under Alaska law the trial judge does not have the prerogative

---

10. AS 11.05.050 states:

    If the defendant is convicted of two or more crimes, before judgment on either, the judgment may be that the imprisonment upon one conviction begins at the expiration of the imprisonment of any other of the crimes. If the defendant is imprisoned upon a previous judgment on a conviction for a crime, the judgment may be that the imprisonment commences at the expiration of the term limited by the previous judgment.

of ignoring the fact that the legislature has established a Parole Board and given it liberal authority to grant parole. The fact that the person sentenced has the opportunity to acquire a rehabilitated outlook and convince the Parole Board that he is ready for early release into society is one of the paramount factors to be considered in sentencing. Nor is this court privileged to ignore the existence of the Parole Board and the fact that in the exercise of its statutory authority it has a direct influence on every sentence of imprisonment which is imposed. To do so is to place undue emphasis on the potential length of the sentence to the exclusion of other important factors such as appellant's character analysis as revealed by the reports of psychiatrists, psychologists, prison authorities and the probation officer's report; his prior criminal record; and the present apparent prognosis for his social rehabilitation. Overriding all of the before-mentioned factors in importance is the knowledge that the person sentenced will receive some therapy in prison; that the prison psychiatrists and psychologists will regularly report the prisoner's progress to the Parole Board which has statutory authority to release the prisoner as soon as it has become convinced that he is ready to return to society.

The minority view of the majority opinion holds that the sentence is "completely arbitrary and shocking to the sense of justice *and thus amounts to cruel and unusual punishment.*" (emphasis supplied). The original sentence imposed by the judge was, in effect, a sentence of 0–36 years. In my opinion it is not legally possible to classify such a sentence in the case of a fourth repeater, fully sanctioned by statute as it is, as "arbitrary and shocking." Furthermore, "arbitrary and shocking" are not the legal equivalent of "cruel and unusual" as that term is used in the United States and Alaska Constitutions. The cruelty against which the Constitutions protect a

convicted man is cruelty inherent in the *method* of punishment.[11] Cruelty implies something inhuman and barbarous.[12] Imprisonment for a crime as prescribed by the legislature cannot, therefore, be legally classified as cruel punishment. It is the accepted modern method of punishment.

Both the United States and the Alaska Constitutions require that the punishment be both cruel *and* unusual in order to violate their prohibition. There is nothing constitutionally "unusual" about a sentence of imprisonment. Imprisonment was the *only* method of punishment available to the trial judge in this case under AS 11.20.240 (2), with respect to seven of the eight counts where the amount of the checks exceeded $50. Imprisonment in jail *or* a fine were the *only* methods of punishment available under AS 11.20.240(1) with respect to the check which was less than $50 in amount.

In my opinion the constitutional ban against "cruel and unusual" punishment was never intended by the framers of our constitutions to be applied in the manner suggested in the majority opinion. No court in the United States has so held on similar facts.

What concerns my colleagues is the fact that the trial judge ordered that the sentences run consecutively. This creates the possibility, remote as it is, that appellant might conceivably have to serve the full term. This could not happen unless appellant's attitude in prison for a sustained period of years was such that the Parole Board felt that he was not ready to be released into society. Appellant's past prison records indicate that he adjusted fairly well within the state and federal prisons; that he took an active part in various programs and pursued recommended aides such as group therapy. The trial judge was justified in assuming that appellant would attempt to qualify for parole at the earliest possible time and that he would

11. State of Louisiana ex rel. Francis v. Resweber, 329 U.S. 459, 464, 67 S.Ct. 374, 91 L.Ed. 422, 426 (1947).

12. Ex parte Kemmler, 136 U.S. 436, 447, 10 S.Ct. 930, 34 L.Ed. 519, 524 (1880).

eventually succeed. In the unlikely event that the Parole Board continued to deny parole over an extended period of years, it would be for reasons determined to be in the best interests of society and in accordance with the Board's statutory responsibility.

The majority has ordered that the sentences below be vacated and that appellant be resentenced. The basic reason seems to be that the sentence is arbitrary and shocking to the sense of justice because not in proportion to the offense. No criteria are announced which would assist the trial judge in fashioning a new sentence that is "in proportion to the offense." Before imposing the original sentence the trial judge had the benefits of an exhaustive probation officer's pre-sentence report, the findings of psychiatrists and psychologists appointed by the court to determine appellant's mental capacity to stand trial, the reports of prison officials and psychiatrists from appellant's three previous institutional commitments, the probation officer's evaluation and recommendation, the district attorney's recommendation, a summary of appellant's past criminal activity, and his own evaluation of appellant based upon personal observation in court.

With this background information the trial judge imposed a sentence the minimum of which could be less than one year. The actual period of imprisonment was entirely dependent upon the effort appellant made to effect his own rehabilitation. The majority now holds, on different legal theories, that this sentence is excessive based upon the assumption that appellant would never qualify for parole. The trial judge had assumed that appellant would qualify for parole. This is quite apparent from his act in later modifying the sentence on a motion to reconsider, to provide that appellant should not be given parole until he had served a minimum of five years. The effect of the attempted modification was to increase the severity of appellant's sentence by providing that the Parole Board could not grant parole before he had served five years. The majority recognizes that the effect of the modification would be to increase the severity of appellant's sentence, but insists on ignoring the parole aspect entirely when considering the sentence in relation to the cruel and unusual punishment argument.

It is obvious that the trial judge was trying to insure that appellant served at least five years. Service of 1 year of a 15 year sentence in Washington, of one year and seven months of a two year sentence in Minnesota, and of four years in Leavenworth had neither rehabilitated appellant nor deterred him from further criminal activity. The trial court's dilemma on remand will be what sentence to impose in order not to shock the sense of justice of the majority and still protect the interests of the public by confining appellant a sufficient length of time to either rehabilitate his distorted outlook or at least deter future deviations in conduct by the increased severity of his sentence.

The majority opinion states:

> I am not unaware of appellant's criminal record. But I believe that even with appellant's history of criminal activity a sentence of such severity is not justified.

I believe the majority owes a duty to the trial judge to explain why, in spite of appellant's record of conviction of at least eleven felonies, the sentence imposed has been found to be so drastically severe as to violate the cruel and unusual punishment prohibitions. The Alaska legislature's directive to the trial judges of Alaska with respect to the punishment of repeaters is in sharp contrast, and, in my opinion, overrides the view of the majority in an area of the law which has traditionally been reserved to the executive and legislative branches. In AS 12.55.050(2) it is provided that a person previously convicted of two felonies may be sentenced to *twice* the prescribed term of imprisonment and if previously convicted of *three or more felonies,*

> then on the fourth conviction he shall be adjudged an habitual criminal, and is punishable by imprisonment for not less

than 20 years nor more than the remainder of his natural life.[13]

On remand the trial judge could resentence appellant to five years on each felony count and to one year on the misdemeanor count, provide that only three of the sentences on the felony counts run consecutively, that the sentences on the other counts run concurrently, and that appellant not be granted parole before five years.[14] This would assure that he served at least one year longer than his last four year experience in Leavenworth. It would accomplish the same objective as the modified sentence, which we have held to be illegal, and could hardly shock the sense of justice of the majority. Other combinations of sentencing on the eight counts could be employed to accomplish the same end without creating a large total in years.

My colleague Justice RABINOWITZ has concurred in the view that the sentence does not violate the constitutional ban against cruel and unusual punishment. His vote to vacate the sentence and remand the case for resentencing appears to be based entirely on his dissenting minority view in Bear v. State [15] that this court has the power to review a legal criminal sentence for abuse of discretion.

My colleague Justice DIMOND adheres to his view that the sentence violates the constitutional ban against cruel and unusual punishment, which is now a minority view, and likewise votes to vacate the sentence and remand the case for resentencing.

Thus, the order to vacate and remand for resentencing has for its legal basis two minority views of this court. In my opinion the order is illegal because it does not have for a basis a legal view concurred in by a majority of the court.

I would reinstate the original sentence herein and affirm.

13. AS 12.55.050 states in its entirety:
   A person convicted of a felony in this state who has been previously convicted of a felony in this state or elsewhere, if the same crime elsewhere would constitute a felony under Alaska law, is punishable as follows:
   (1) If the person is convicted of a felony which would be punishable by imprisonment for a term less than his natural life, and had previously been convicted of one felony, then he is punishable by imprisonment for not more than twice the longest term prescribed for the felony of which that person is convicted.
   (2) If the person has previously been convicted of two felonies, then he is punishable by imprisonment for not more than twice the longest term prescribed herein for a second conviction of felony.
   (3) If the person has previously been convicted of three or more felonies, then on the fourth conviction he shall be adjudged an habitual criminal, and is punishable by imprisonment for not less than 20 years nor more than the remainder of his natural life.

14. AS 33.15.230(a) provides that the court may, "when in its opinion the ends of justice and best interests of the public require," designate in the sentence the minimum term at the expiration of which the prisoner is eligible for parole, which shall *not be more than one third* of the maximum sentence imposed.

15. 439 P.2d 432 (Alaska 1968).