Steven L. STIEGELE, Appellant,

v.

STATE of Alaska, Appellee.

No. A–399.

Court of Appeals of Alaska.

June 15, 1984.

A. Lee Petersen, Cummings & Routh, and Charles E. Tulin, Anchorage, for appellant.

Jeffrey W. Cole, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before: BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

A jury found Steven Stiegele guilty of three counts of second-degree murder, an unclassified felony. AS 11.41.110. He is presently awaiting sentencing. After the verdict was returned, the trial court revoked Stiegele's bail and committed him to custody. *See* AS 12.30.040(b). Stiegele appeals the trial court's order denying him bail. AS 12.30.030(b);[1] Alaska R.App.P. 206(b)[2]; Alaska R.App.P. 207.[3] We affirm.[4]

## FACTS

Stiegele was driving a pickup truck with four passengers when the vehicle left the road and ran into the woods. Three of the passengers were killed. A blood-alcohol test, administered to Stiegele about two hours after the accident, showed an alcohol content of .13, which indicated a much higher content at the time of the accident. Prior to trial, Stiegele was released without monetary bail to the custody of his parents. He complied with all of the conditions of release including a requirement that he report three times a week for alcohol and drug use monitoring. The results of the monitoring were all satisfactory. Stiegele is a longtime resident of Alaska and has a steady employment history. He has no prior criminal record, and, except for the incident in question, he has a generally good driving record. He has never missed a court appearance.

1. Alaska Statute 12.30.030(b) provides:
   When a court denies a motion under (a) of this section [allowing review of an order denying bail] or conditions of release have been imposed by the court having original jurisdiction over the offense, an appeal may be taken to the court having appellate jurisdiction over the court denying the motion or imposing the conditions subject to the rules of the Supreme Court of Alaska, and the District Court Rules of Criminal Procedure. The order of the lower court shall be affirmed unless it is found that the lower court abused its discretion. If it is held that the lower court did abuse its discretion, the appellate court may modify, vacate, set aside, reverse, remand the action for further proceeding, or remand the action directing the entry of the appropriate order, which may include ordering the person to be released under AS 12.30.020(a). The appeal shall be determined promptly.

2. Alaska Rule of Appellate Procedure 206(b) provides, in pertinent part:
   *Release Pending Appeal.* When an appeal on the merits is pending, an appeal under AS 12.30.030(b) from an order refusing bail pend-

   ing appeal or imposing conditions of release pending appeal shall be in the form of a motion filed in the merit appeal.

3. Alaska Rule of Appellate Procedure 207 provides:
   *Appeals Relating to Release Prior to Judgment.* An appeal authorized by AS 12.30.030(b) or AS 12.30.040, relating to the release of a criminal defendant prior to the entry of final judgment, shall be determined promptly. The appeal shall take the form of a motion and shall comply with Rules 206(b) and 503. The appellee may respond as provided in Rule 503(d). The court of appeals or a judge thereof may order the release of the appellant pending such an appeal. The decision of the court of appeals on such an appeal is a "final decision" within the meaning of Rule 302.

4. Stiegele has indicated an intent to appeal his conviction. In this opinion we address only Stiegele's right to bail, reserving for later consideration his merit appeal.

After the verdict, Stiegele gave notice of an intent to appeal his conviction. There is nothing in the record to suggest that Judge Buckalew would not have released Stiegele on bail pending his sentencing and appeal, if it had not been for AS 12.30.040, which provides:

*Release after conviction.* (a) A person who has been convicted of an offense and is awaiting sentence, or who has filed an appeal shall be treated in accordance with the provisions of AS 12.30.020 unless the court has reason to believe that no one or more conditions of release will reasonably assure the appearance of the person as required or prevent the person from posing a danger to other persons in the community. If that determination is made, the person may be remanded to custody. This section does not affect the right of a person appealing from a judgment of conviction from a district court to the superior court to be released on bail pending appeal under Rule 2(c) of the District Court Rules of Criminal Procedure.

(b) Notwithstanding the provisions of (a) of this section, if a person has been convicted of an offense which is an unclassified felony or a class A felony, the person may not be released on bail either before sentencing or pending appeal.

Stiegele first argues that this statute denies him his constitutional rights to due process and equal protection. U.S. Const. amend. XIV; Alaska Const. art. I, § 1; art. I, § 3. He contends that the legislature has arbitrarily discriminated among those convicted of dangerous crimes by allowing bail for some while denying it to others. His due process argument is essentially the same: he argues that allowing bail to dangerous offenders convicted of class B offenses but denying it in his case is irrational.

The Alaska Supreme Court has interpreted our state equal protection and due process provisions more broadly than federal courts have construed the comparable federal provisions. Therefore, if a statute satisfies Alaska constitutional requirements, it will also satisfy federal law. In *Griffith v. State*, 641 P.2d 228 (Alaska App.1982), we noted that in order to withstand an equal protection challenge, a legislative classification need not be perfect. It " 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' " 641 P.2d at 233 (quoting *Isakson v. Rickey*, 550 P.2d 359, 362 (Alaska 1976)). In *Griffith*, we recognized two reasons for a statute limiting bail pending sentencing and appeal: (1) assurance of continued appearance and amenability to the further orders of the court; and (2) protection of the community. 641 P.2d at 232. Applying our equal protection standard in light of these criteria, we find AS 12.30.040 constitutional. In effect, the legislature has denied bail to those convicted of the most serious crimes which carry the most serious penalties. *See* AS 11.81.250; AS 12.-55.125.

Stiegele disputes this conclusion, pointing out that some individuals convicted of class B offenses, particularly repeat offenders, might receive longer sentences than first offenders convicted of unclassified or class A felonies. He also points out that his drunk driving, which resulted in a second-degree murder conviction, might have been charged, through prosecutorial discretion, as criminally negligent homicide, a class C felony. *See* AS 11.41.130. Moreover, in Stiegele's view, the death of his victims was fortuitous. Consequently, he concludes that his conduct was no worse than the conduct of a drunk driver whose victims were only injured. *See* AS 11.41.-210(2) (a person recklessly causing serious physical injury to another is guilty of assault in the second degree, a class B felony). *But cf.* AS 11.41.200 (a person who recklessly causes serious physical injury to another by means of a dangerous instrument or who intentionally performs an act that results in serious physical injury to another under circumstances manifesting extreme indifference to the value of human

life, is guilty of assault in the first degree, a class A felony.)

■ We believe that Stiegele has misinterpreted our decision in *Griffith*. In that case we compared classes of offenders and not individual members from different classes. We are satisfied that the average member of the class comprised of those convicted of unclassified felonies and class A felonies will serve a longer sentence and therefore present a greater risk of flight than the average offender convicted of a class B felony or a lesser offense. In addition, it would not have been unreasonable for the legislature to conclude that the average unclassified or class A offender is more dangerous than the average class B or C offender. Therefore, we find a legitimate basis for the legislative classification distinguishing unclassified and class A felonies from class B felonies. Consequently, AS 12.30.040 does not deny Stiegele his substantive due process or equal protection rights. As we pointed out in *Griffith*, "[a] careful limitation on bail to dangerous convicted persons is indeed rationally related to the legislative purposes of continued appearance and community protection." 641 P.2d at 234.

Stiegele next argues that AS 12.30.040(b) is an unconstitutional invasion of the supreme court's rule-making power. He relies on *Leege v. Martin*, 379 P.2d 447, 450–51 (Alaska 1963). In *Leege*, the defendants challenged as unconstitutional a legislative amendment to a criminal statute providing for forfeiture of commercial fishing licenses for fishing in closed areas. The amendment provided for immediate forfeiture upon conviction and prohibited stays pending appeal. 379 P.2d at 450 n. 7. The supreme court held that the amendment was an unconstitutional infringement on its rulemaking power. *Id.* at 451. The court relied on article IV, § 15 of the state constitution which provides:

> The supreme court shall make and promulgate rules governing the administration of all courts. It shall make and promulgate rules governing practice and procedure in civil and criminal cases in all courts. These rules may be changed by the legislature by two-thirds vote of the members elected to each house.

The court, in *Leege*, found a direct conflict between the amendment and applicable court rules already in effect:

> Where the jurisdiction of this court is invoked, either by way of appeal, by petition for review, or by original application, this court or a justice thereof is authorized by Supreme Ct. Rules 7(d) and 33(b) to stay the enforcement or effect of the judgment appealed from or of the order or decision sought to be reviewed, and to stay proceedings in the court below. The express authority to grant stays is sufficiently broad to allow this court to stay the enforcement of that portion of a magistrate court's judgment providing for a license forfeiture. If chapter 112 is effective, it will obviously limit this court's authority to grant stays, and thus would bring about a change of Supreme Ct. Rules 7(d) and 33(b). The question we are faced with is whether the legislature properly exercised its constitutional rule changing power in enacting chapter 112, so that the statute should be given effect as limitation of judicial power to grant stays.

379 P.2d at 449 (footnote omitted). The court went on to hold that the statute was deficient for the purpose of changing a court rule. The court reasoned:

> As a matter of reason and necessity and in order to give article IV, section 15 of the constitution a practical working interpretation, we must hold that a legislative enactment will not be effective to change court rules of practice and procedure unless the bill specifically states that its purpose is to effect such a change. Since chapter 112 does not contain such a statement of purpose, that portion of the statute which purports to forbid the granting of stays pending appeal is ineffective and does not change rules of practice and procedure made and promulgated by this court.

379 P.2d at 451 (footnote omitted). *See also State v. Wassillie*, 606 P.2d 1279, 1283

(Alaska 1980) (Rabinowitz, J., dissenting); *State v. Smith*, 84 Wash.2d 498, 527 P.2d 674, 677 (1974).

The state responds that the great weight of authority holds that statutes limiting bail on appeal do not infringe upon the rule-making power of courts. *See, e.g., Spitznas v. State*, 648 P.2d 1271, 1274 (Okla.Crim.App.1982); *State ex rel. Scott v. St. Joseph Superior Court*, 413 N.E.2d 565 (Ind.1980).

We consider the issue a close one. *See Parker v. State*, 667 P.2d 1272, 1274–75 (Alaska App.1983); *Kwallek v. State*, 658 P.2d 794, 795 (Alaska App.1983). Many cases cited by the state do not address claims that statutes limiting bail conflict with a constitutional grant of procedural rule-making power to courts. Rather, they reject claims that such statutes conflict with some inherent power of courts to grant bail. For example, the state cites *Spitznas v. State* for the following proposition:

> The statute challenged herein does not attempt to control a matter in which the courts have ultimate authority. There is no fundamental right to bail on appeal, and the effect of its denial is to require immediate commencement of a sentence rendered by the trial court and is "simply another aspect of the punishment provisions of the statutory scheme."

648 P.2d at 1274 (quoting *Hart v. State*, 405 So.2d 1048, 1053 (Fla.Dist.Ct.App. 1981)).

The *Spitznas* reasoning would appear to validate the statute, condemned in *Leege*, which provided for immediate enforcement of forfeitures and precluded stays. However, *Leege* indicates that court rules which stay enforcement of orders and judgments pending appeal are procedural and therefore within the court's constitutional power to enact rules. It would seem that the court would have the same authority to enact procedural provisions regarding bail, which postpones the legal effect of a felony conviction. If so, the requirements of *Leege* must be met before the legislature can alter a court rule governing bail. The state does not argue that those requirements were met when the legislature amended AS 12.30.040(b).

■ We need not determine whether AS 12.30.040(b) is procedural or substantive, however, because we are satisfied that it does not conflict with a supreme court rule. Consequently, Stiegele's situation differs from the situation addressed in *Leege*. Three rules address bail. Criminal Rule 41 addresses bail prior to conviction. It provides that a defendant in a criminal proceeding is entitled to bail pursuant to AS 12.30.010–.080. Criminal Rule 32(a) addresses bail after conviction, pending sentencing. It authorizes a trial court to commit a defendant to custody pending sentence or to continue or alter his bail as provided in Rule 41(a). Finally, Appellate Rule 206(a)(1) provides that "[a] sentence of imprisonment shall be stayed if an appeal is taken and the defendant is released pending appeal."

There is nothing in these rules which directly conflicts with AS 12.30.040(b). In fact, Criminal Rule 41(a) seems to adopt it by reference. Stiegele argues, however, that Rules 32(a) and 41(a) were in effect prior to the amendments to AS 12.30.040(b) which restricted bail. He contends that the supreme court, in promulgating Rule 41(a), did not intend to adopt future amendments to AS 12.30.010–.080. He relies on the following argument from the dissenting opinion in *State v. Wassillie*:

> On appeal, the state does not contend that AS 12.30.040(b) was specifically intended to change Rule 32(a) but that Criminal Rule 41(a) is dispositive procedurally of the matter. This latter rule provides:
>
> > The defendant in a criminal proceeding is entitled to bail pursuant to AS 12.-30.010–12.30.080.
>
> Wassillie notes that Criminal Rule 41(a) was amended prior to the enactment of AS 12.30.040(b) in 1974. Rule 41(a) took its present form by amendment through Supreme Court Order 157, effective February 15, 1973. Although the wording is somewhat ambiguous, I

think that Rule 41(a) does not encompass the subsequent change in the Bail Reform Act that resulted with the enactment of AS 12.30.040(b). Reading Criminal Rules 32(a) and 41(a) together precludes alteration by subsequent legislation, absent an express purpose to change the rules. This analysis is based on the assumption that bail is a matter of procedure.

606 P.2d at 1286 (Rabinowitz, J., dissenting).

It appears that Justice Rabinowitz was interpreting the rule by relying on the general rules governing interpretation of statutes which incorporate other statutes by reference. *See* 3 C. Sands *Sutherland Statutory Construction,* § 67.10 at 236–38 (4th ed. 1975) (rules of interpretation and construction of statutes usually applied in the interpretation of court rules of practice and procedure). As a leading treatise points out:

> There are two general types of reference statutes: statutes of specific reference and statutes of general reference. A statute of specific reference, as its name implies, refers specifically to a particular statute by its title or section number. A general reference statute refers to the law on the subject generally. An example of this type of reference is a provision that contracts made under the statute are to be let "in the manner now provided by law."
>
> General and specific references have been held to differ in regard to whether subsequent legislation which fits the reference is adopted. "[W]hen a statute adopts the general law in a given subject, the reference is construed to mean that the law is as it reads thereafter at any given time including amendments subsequent to the time of adoption. This is to be contrasted with adoption by reference of limited and particular provisions of another statute, in which case the reference does not include subsequent amendments."

2A C. Sands *Sutherland Statutory Construction* § 51.07 at 322 (4th ed. 1975) (footnotes omitted).

Sutherland further explains:

> A statute of specific reference incorporates the provisions referred to from the statute as of the time of adoption without subsequent amendments, unless the legislature has expressly or by strong implication shown its intention to incorporate subsequent amendments with the statute. In the absence of such intention subsequent amendment of the referred statute will have no effect on the reference statute.

*Id.* § 51.08 at 324 (footnotes omitted).

Stiegele appears to argue that because the supreme court cited specific sections in Alaska R.Crim.P. 41(a), the rule was of specific reference. The cases which distinguish between specific and general references are, however, to the contrary. The leading case is *George Williams College v. Village of Williams Bay,* 242 Wis. 311, 7 N.W.2d 891 (1943). The Wisconsin court applied the rules distinguishing between a general and a special reference as follows:

> [W]hen an adopting statute refers to the law generally which governs a particular subject, the reference in such case "includes not only the law in force at the date of the adopting act but also all subsequent laws on the particular subject referred to, so far at least as they are consistent with the purposes of the adopting act." In the case at bar the whole scheme of procedure [governing sewer assessments] used in the cities is clearly adopted [and made applicable to villages]. The words of the statute and the text of the note appended to the bill by the revisor indicate that it is the general law on the subject of sewer assessments that is adopted. *This being so, the fact that the law is referred to also in terms of the sections of the statutes in which it is to be found is not considered sufficient to make it an adoption of just one particular statute.*

*Id.* 7 N.W.2d at 894 (emphasis supplied). In addition, two recent cases hold an incor-

poration by reference of all the law on a subject to be a general reference even though the referenced statutes are cited by section number. *See Director of Workers' Compensation v. Peabody Coal Co.*, 554 F.2d 310, 323–24, 329 (7th Cir.1977); *E.E. O.C. v. Chrysler Corp.*, 546 F.Supp. 54, 74 (E.D.Mich.1982), *aff'd*, 733 F.2d 1183 (6th Cir.1984). In the latter, the court noted that "[o]nly one case of those cited in *Sutherland* §§ 51.07 and .08 appears to designate an incorporation 'specific' and thus refuses to give effect to subsequent amendments to the incorporated statute. The majority of cases merely interpret the incorporation to be general and give effect to subsequent amendments." [Citations omitted.]

 We are satisfied that in enacting Criminal Rule 41(a), the supreme court intended a general rather than a specific reference to the bail statutes. We note that the rule specifically refers to "AS 12.-30.010–.080," which is the entire bail chapter of title 12. It includes provisions that have no relationship to procedure at all, such as AS 12.30.060, which establishes penalties for violation of the Bail Act.

We believe common sense and a reasonable concern for comity with the legislature also supports this interpretation of Rule 41(a). As the supreme court pointed out in *Leege*, the need to avoid conflicts between the legislature in enacting statutes, and the supreme court in enacting rules, requires "cooperation between the legislative and judicial branches." 379 P.2d at 451. The supreme court is aware of the amendments to the statutes restricting bail, but it has never modified Alaska R.Crim.P. 41(a). Certainly, if the supreme court disagreed with the amendment it could have amended the rule to avoid the statutory restrictions on bail. We therefore conclude that no conflict exists and that Criminal Rule 41(a) adopted by reference subsequent amendments, including the 1980 amendments to AS 12.30.040(b).

 This decision is not inconsistent with decisions recognizing an inherent power in the trial courts to grant bail where no statute or constitutional provision expressly authorizes or prohibits it. *See, e.g., Martin v. State*, 517 P.2d 1389, 1398 (Alaska 1974) (despite absence of statutory or constitutional authority, trial court had inherent power to grant bail pending revocation of probation proceedings); *Dobrova v. State*, 674 P.2d 834, 835 (Alaska App.1984) (despite absence of statutory authority, trial court has inherent power to grant bail pending sentence appeal). These cases apply the general rule that the common law, *i.e.*, a court's power to declare the law, exists in the absence of a conflicting statute or court rule. *See* AS 01.10.010. They recognize that legislative silence regarding availability of bail does not preclude a court from granting it. Here the legislature has, however, specifically forbidden bail to those convicted of unclassified felonies and class A felonies and the supreme court has enacted a rule which we construe to be consistent with that legislative action. Under these circumstances we hold that the trial court has no inherent authority to grant bail in derogation of AS 12.30.040(b).

The order of the superior court denying bail is AFFIRMED.