**Nick J. DANCER, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–941.**

Court of Appeals of Alaska.

March 14, 1986.

Robert H. Wagstaff, Anchorage, for appellant.

Robert D. Bacon, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Harold M. Brown, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., SINGLETON, J. and SERDAHELY, Superior Court Judge.*

## OPINION

SINGLETON, Judge.

Nick J. Dancer pled guilty and was convicted of one count of sexual abuse of a minor in the first degree, an unclassified felony. AS 11.41.434(a)(1). Dancer received the eight-year presumptive term reserved for a first felony offender convicted of sexual abuse of a minor in the first degree. AS 12.55.125(i)(1). He appeals, contending that Alaska's presumptive sentencing statutes are unconstitutional. We conclude that Dancer's constitutional arguments have been considered and rejected in prior decisions of the Alaska Supreme Court and of this court. We conclude, however, that Judge Hanson's fact findings required him to refer this case to the three-judge panel. We therefore remand this case for resentencing.

Dancer has mounted an extensive constitutional attack on presumptive sentencing. Each of his arguments will be addressed in turn. There are, however, certain themes basic to his entire argument which we discuss in an introductory section.

## INTRODUCTION

The Alaska Revised Criminal Code became law when it was signed by the governor on July 22, 1978, with an effective date of July 1, 1980. Stern, *History of the Alaska Criminal Code Revision,* Criminal Code Manual, Alaska Department of Law, Criminal Division, at 10 (June 1979). As part of the Revised Code, the legislature enacted a system of presumptive sentencing which departed from previous practice in a number of ways. *See generally* Stern, *Presumptive Sentencing in Alaska,* 2 Alaska L.Rev. 227 (1985). We are guided in our interpretation of the presumptive sentencing system by the tentative drafts to the current statutes and the Report of the Twentieth Century Fund Task Force on Criminal Sentencing, *Fair and Certain Punishment* (1976) (hereafter *Fair and Certain Punishment* ), upon which the Revision Committee and legislature relied.

■ One of Dancer's basic arguments is that the weight of learned opinion opposes presumptive sentencing. Dancer finds such opposition expressed in treatises and law review articles and incorporated into the various provisions of the ABA Standards for Criminal Justice, Sentencing Alternatives and Procedures (Vol. III, 2d ed. 1980 & Supp.1982). Dancer points out that some of those who originally favored a presumptive system have become opponents because of perceived abuses where such systems have been enacted. In making this argument, Dancer misperceives the role of appellate courts in reviewing constitutional challenges to legislation. We may not concern ourselves with the wisdom of legislation. Our role is much more modest. We evaluate the legislation to determine whether it contravenes any prohibitions in the constitution. If it does not, we must uphold the legislation. Policy arguments advocating changes to constitutional legislation must be addressed to the legislature, not the courts.

■ A second pervasive theme in Dancer's various arguments is the assertion that sentences under the presumptive scheme are fundamentally unfair, when compared to sentences imposed before enactment of presumptive sentencing. Presumptive sentencing, in Dancer's view, does not have the flexibility to carry out the constitutional mandate that sentencing should reflect the twin goals of reforming the defendant and protecting the community.[1] Alaska

---

* Serdahely, Superior Court Judge, sitting by assignment made pursuant to article IV, section 16 of the Constitution of Alaska.

**1.** Criticism of former sentencing law pinpointed the personality of the sentencing judge as the paramount factor in determining the length of sentences. Some judges were known to be lenient and some to be severe. Stern, 2 Alaska L.Rev. at 228–29. In part, current law has been structured to eliminate the benefit of a lenient judge and the detriment of a severe judge. Functionally, this is the primary shift between the old and the new sentencing codes. To the

Const. art. I, § 12. In practical terms, Dancer's argument is that the statutory provision for a three-judge panel does not prevent "manifestly unjust" presumptive sentences. AS 12.55.165–.175. We have previously rejected this argument. *See Nell v. State*, 642 P.2d 1361, 1368 (Alaska App.1982). Dancer contends that our confidence in the three-judge panel was misplaced. In part, his argument is that three-judge panels, in general, are not performing their statutory function. This is not the proper place to consider that type of charge. Specific appeals, in concrete cases, will enable us to correct errors in the work of the three-judge panel. *See, e.g., Smith v. State*, 711 P.2d 561, (Alaska App.1985).

In *Smith*, we recognized that the legislature intended that AS 12.55.165 establish two separate bases for referral of a case from a trial court to a three-judge panel for sentencing. First, referral is warranted in situations where manifest injustice would result from failure to consider relevant, nonstatutory aggravating or mitigating factors in sentencing; and, second, where manifest injustice would result from imposition of a presumptive sentence, whether or not adjusted for statutory aggravating and mitigating factors. We addressed the second basis in *Lloyd v. State*, 672 P.2d 152, 154 (Alaska App.1983), where we evaluated alternate semantic interpretations of the statutory phrase "manifest injustice," *e.g.*, "shocking to the conscience" or "obviously unfair." Both of these alternative phrasings, we concluded, appropriately emphasized the subjective element of the decision. *Lloyd*, 672 P.2d at 154. Nevertheless, we emphasized that the *Chaney* criteria provide some objectivity in reaching the

ultimate decision of whether a given presumptive sentence, adjusted for aggravating and mitigating factors, is manifestly unjust. *See State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970).

While we did not make the connection explicit, the second prong of the "manifest injustice" standard, as refined in *Lloyd*, is similar to the "clearly mistaken" standard adopted by the Alaska Supreme Court for sentence review in *McClain v. State*, 519 P.2d 811 (Alaska 1974). In order to apply this standard, the trial court must compare the presumptive sentence with sentences generally received for similar conduct. *Pears v. State*, 698 P.2d 1198, 1202–04 (Alaska 1985). Decisions of the Alaska Supreme Court evaluating sentences under *McClain* would be particularly helpful in determining whether, in view of the totality of the circumstances, a presumptive sentence adjusted for statutory aggravating and mitigating factors is manifestly unjust in a particular case. If a sentence equal to the presumptive term would have been found "clearly mistaken" on review under former law, it will probably be "manifestly unjust" under current law. Furthermore, a complete analysis will also require consideration of the appropriate sentence for any lesser-included offenses which defendant's conduct most nearly approximates. AS 12.-55.155(d)(9); *Braaten v. State*, 705 P.2d 1311, 1324–26 (Alaska App.1985) (Singleton, J., concurring). *See also Heathcock v. State*, 670 P.2d 1155, 1160–61 (Alaska App. 1983) (equating the proportionality-review approach to cruel and unusual punishment analysis in recent cases with the determination of "manifest injustice") (Singleton, J., concurring in part and dissenting in part).[2]

extent that Dancer is arguing that he has a constitutional right to the opportunity to a random assignment of a lenient judge for sentencing, the argument is frivolous.

2. We do not suggest that the "clearly mistaken" standard under former law and the "manifestly unjust" standard under current law are identical. Certainly, a legislative presumptive sentence must be treated more deferentially than a single judge's sentencing decision. As we have indicated, referral to the three-judge panel will be relatively rare. *Walsh v. State*, 677 P.2d 912,

918–19 (Alaska App.1984). The functional similarity between the two standards is that both involve review of a sentence by a panel of judges. The supreme court rarely overturned trial court sentences under the *McClain* standard. Likewise, the majority of a panel of judges must concur if any deviation from the presumptive term is to be allowed. AS 12.55.-175(d). It is likely that a panel will just as rarely overturn a presumptive sentence based upon a finding that it is manifestly unjust. In neither case, does the rarity of a decision disap-

In contrast, where the argument is made that manifest injustice results from failure to consider relevant aggravating or mitigating factors not specifically included in AS 12.55.155, the analysis would differ. *Smith*, 711 P.2d at 569–70. The proponent must specify an aggravating or mitigating factor that should have been, but was not, included in AS 12.55.155 and establish its relevance to his or her case. In evaluating the proposed factor, the trial court should consider the underlying rationale for aggravating and mitigating factors. The revisers of Alaska's Criminal Code relied upon the Report of the Twentieth Century Fund Task Force on Criminal Sentencing, *Fair and Certain Punishment* (1976) which states:

> *The Task Force recommends that the legislature, or the body it designates, also define specific aggravating or mitigating factors, again based on frequently recurring characteristics of the crime and the criminal....*

> In imposing sentences, judges normally consider a wide variety of factors. Some of these, such as the defendant's race, appearance, or sex are clearly improper; others, such as whether the defendant pleaded guilty or "cooperated" with the authorities, are debatable. It is the view of the Task Force, based on its own experience and on what it has learned about the system as a whole, that different judges—acting without legislative or appellate court guidance—have different views as to whether a given factor is appropriately considered in sentencing. It is our conclusion that these issues should be openly debated, that, in situations where the factors are

fairly typical and frequently recurring, the legislature (or delegated body) should decide whether these factors should be considered in sentencing.

> Only in truly extraordinary and unanticipated circumstances would the judge be permitted to deviate from the presumptive sentence *beyond* the narrow range permitted by an ordinary finding of aggravating or mitigating factors. Any deviation would have to be justified in a reasoned opinion subject to a searching review on appeal. Absolute maximum or minimum sentences available to a judge in such extraordinary cases should also be established by the legislature.

*Fair and Certain Punishment,* at 20–21 (emphasis in original).

This two-fold analysis under AS 12.55.-165, which we adopted in *Smith*, 711 P.2d 561, was anticipated in the Task Force report and foreshadowed in the tentative draft. Alaska Revised Criminal Code, Part VI, commentary at 71–74 (Tentative Draft 1978). It appears that the legislature, in adopting AS 12.55.165, in effect delegated to the three-judge panel the authority to create new aggravating and mitigating factors under the common law,[3] which would be available for consideration in subsequent cases. Such aggravating and mitigating factors, if adopted by the three-judge panel in resolving a concrete case, should meet the general criteria controlling the legislative adoption of aggravating or mitigating factors. In contrast, if the factors which make a presumptive sentence manifestly unjust in a given case are "truly extraordinary and unanticipated circumstances," the case would fall in the second

---

proving a sentence establish a lack of meaningful sentence review.

**3.** The three-judge panel's authority to establish new aggravating and mitigating factors constitutes a legislative recognition of the court's common law power to develop the law subject to legislative and constitutional limitations. *See* AS 01.10.010 (applicability of the common law). *See also Wells v. State,* 687 P.2d 346, 348–51 (Alaska App.1984) (discussing the legislative decision to permit common law development of the necessity defense despite inclusion of the

defense within the revised code). Of course, any common law decision establishing a new aggravating or mitigating factor is subject to reconsideration by the legislature. It is unlikely that the panel would accept a "new" factor if that factor had already been expressly considered and rejected by the legislature. *Cf.* AS 12.55.155(g) (voluntary alcohol or drug intoxication or chronic alcoholism or other drug addiction may not be considered an aggravating or mitigating factor).

or *Lloyd* category, rather than the first or *Smith* category for consideration.

The foregoing discussion of the function of the three-judge panel as the "safety valve" for our presumptive sentencing scheme is a response to Dancer's general complaints about the statutory system and explains our rejection of those general complaints. In the remainder of this opinion we address each of Dancer's specific constitutional challenges to Alaska's presumptive sentencing scheme.

## SEPARATION OF POWERS

■ Dancer argues that the separation of powers, implicit in the Alaska State Constitution, provides Alaska trial courts with inherent power to suspend legislatively established sentences and place convicted persons on probation during the suspended period. Dancer reasons that any legislative attempt to interfere with this power by establishing flat-time sentences, minimum sentences, or presumptive sentences is therefore void unless the legislation expressly provides or can be interpreted to provide the trial court with discretion to suspend the sentences established. Dancer relies primarily on *State v. McCoy*, 94 Idaho 236, 486 P.2d 247 (1971), and *State v. Lindquist*, 99 Idaho 766, 589 P.2d 101 (1979). He also finds support in Chief Justice Bird's concurring and dissenting opinions in *People v. Tanner*, 23 Cal.3d 16, 151 Cal.Rptr. 299, 587 P.2d 1112 (1978) (Bird, C.J., concurring and dissenting), *vacated on rehearing*, 24 Cal.3d 514, 156 Cal.Rptr. 450, 480, 596 P.2d 328, 358 (1979) (Bird, C.J., concurring and dissenting) and decisions of the North Carolina, New York, Michigan and New Jersey courts. *See People v. Stickle*, 156 Mich. 557, 121 N.W. 497, 499 (1909); *State ex. rel. Gehrmann v. Osborne*, 79 N.J.Eq. 430, 82 A. 424, 428 (1912); *People ex rel. Galea v. McCoy*, 27 Misc.2d 850, 209 N.Y.S.2d 205, 206 (1960) *rev'd on other grounds*, 14 A.D.2d 979, 221 N.Y.S.2d 417 (1961); *State v. Simmington*,

235 N.C. 612, 70 S.E.2d 842, 844 (1952). *See generally* Note, *Separation of Powers—The Suspended Sentence*, 51 N.C.L. Rev. 184 (1972); Annot. 100 A.L.R.3d 431, § 6 (1980 & Supp.1985).

The Alaska Supreme Court has consistently held that our trial courts have no inherent authority to suspend sentences; the power exists only when conferred upon the judiciary by the legislature. *See, e.g., Pete v. State*, 379 P.2d 625 (Alaska 1963); *but cf. Wright v. Anchorage*, 590 P.2d 425 (Alaska 1979); *Kodiak v. Jackson*, 584 P.2d 1130 (Alaska 1978) (mandatory minimum sentences created by city ordinance are invalid when in conflict with state law authorizing trial courts to suspend sentences). The Alaska Supreme Court has consistently held that the power to determine an appropriate punishment for an offense is vested exclusively in the legislature. *See, e.g., Rust v. State*, 582 P.2d 134, 136–37 (Alaska 1978); *B.A.M. v. State*, 528 P.2d 437 (Alaska 1974); *Faulkner v. State*, 445 P.2d 815, 818 (Alaska 1968). *Cf. Thomas v. State*, 566 P.2d 630, 637–38 (Alaska 1977); *Speas v. State*, 511 P.2d 130 (Alaska 1973).[4] In reliance on this authority, we have previously sustained Alaska's presumptive sentencing statute against challenges similar to those raised by Dancer. *See, e.g., Koteles v. State*, 660 P.2d 1199, 1200 (Alaska App.1983); *Wright v. State*, 656 P.2d 1226, 1227–28 (Alaska App. 1983); *Nell v. State*, 642 P.2d 1361, 1368–70 (Alaska App.1982). *See also Martin v. State*, 664 P.2d 612, 620 (Alaska App.1983) (twenty-year minimum sentence for conviction of first-degree murder does not violate constitution), *cert. denied*, 465 U.S. 1007, 104 S.Ct. 1001, 79 L.Ed.2d 234 (1984).

Dancer acknowledges the existence of these cases and recognizes that they are in conformity with the majority view in the United States. He argues, however, that *Nell* and its progeny apply only to repeat offenders and contends that the constitutional position of a first offender is worthy

---

**4.** The only constitutional limitations on the legislature's power to prescribe punishments which the supreme court has previously recognized are the due process and cruel and unusual punishment clauses of the state and federal constitutions. *Faulkner v. State*, 445 P.2d at 818.

of greater protection and consideration. Dancer misunderstands *Nell.* While *Koteles* and *Wright* involved individuals who were subject to presumptive sentencing as second felony offenders, Nell was a first offender convicted of robbery in the first degree, former AS 11.41.500(a)(1). He was subject to a presumptive sentence under former AS 12.55.125(c)(1), which provided a presumptive sentence of six years for a first offender who commits a class A felony other than manslaughter and used or possessed a firearm during the commission of the offense. 642 P.2d at 1367. Nell's situation is therefore indistinguishable from Dancer's case. Martin was also a first offender.[5] *Martin,* 664 P.2d 612.

## DUE PROCESS AND EQUAL PROTECTION

 Dancer next argues that to the extent that presumptive sentencing denies him individualized consideration and the opportunity to have his rehabilitation advanced by a suspended sentence, it denies him his constitutional right to due process and equal protection. U.S. Const. amend. XIV; Alaska Const. art. I, §§ 1, 3. Similar arguments were rejected in *Nell, Koteles* and *Wright.* The Alaska Supreme Court has established a single test for determining whether a statutory penalty constitutes cruel or unusual punishment, or violates substantive due process. *See Thomas v. State,* 566 P.2d 630, 635 (Alaska 1977);

*Green v. State,* 390 P.2d 433, 435 (Alaska 1964); *accord Lemon v. State,* 654 P.2d 277, 278–79 n. 2 (Alaska App.1982); *M.O.W. v. State,* 645 P.2d 1229, 1231 n. 4 (Alaska App.1982). *Cf. Reynolds v. State,* 664 P.2d 621 (Alaska App.1983) (including defendant's conduct within definition of first-degree sexual assault did not subject him to cruel and unusual punishment). In *Thomas,* the court said:

In *Green v. State,* 390 P.2d 433, 435 (Alaska 1964), this court articulated the following test for determining whether a particular punishment constitutes cruel and unusual punishment:

Only those punishments which are cruel and unusual in the sense that they are inhuman or barbarous, or so disproportionate to the offense committed as to be completely arbitrary and shocking to the sense of justice may be stricken as violating the due process [and cruel and unusual punishment] clauses....

566 P.2d at 635 (footnote omitted). The United States Supreme Court recently phrased a different constitutional test for cruel and unusual punishment, stating: "[W]e hold as a matter of principle that a criminal sentence must be proportionate to the crime for which the defendant has been convicted." *Solem v. Helm,* 463 U.S. 277, 290, 103 S.Ct. 3001, 3009, 77 L.Ed.2d 637, 649 (1983).[6] The Court went on to explain

---

**5.** In *Smith,* 711 P.2d 561, the trial court proposed that the three-judge panel adopt a new mitigating factor that would enable the court to consider favorable information pertaining to a youthful first offender's potential for rehabilitation. As envisioned by Superior Court Judge Ripley, this factor could be applied only to youthful first offenders whose criminal acts were out of character and whose background, education, and experience established that they could be rehabilitated without danger to the public by a sentence substantially shorter than the presumptive sentence. The three-judge panel rejected this proposed factor without considering its merits because it concluded that the factor, if established, would not warrant substantial reduction in the presumptive sentence. We reversed, holding that the factor should have been considered on its merits. This factor, if generally applied, would enable the trial courts to differentiate between first offenders

whose felony involved characteristic conduct, evidenced by previous unchanged activities or misdemeanor and juvenile convictions, and those whose felony conviction involved conduct which was truly impulsive and out of character. General recognition of this mitigating factor, where appropriate, would undercut the force of most of Dancer's policy arguments about presumptive sentencing as it applies to first offenders.

**6.** In *Green,* the Supreme Court of Alaska noted that our constitution, unlike those in some sister states, has no specific provision requiring that penalties shall be proportioned to the nature of the offense. 390 P.2d at 435. Nevertheless, *Solem* requires our courts to consider proportionality; the three-judge panel provides an additional check to correct any sentence that might otherwise run afoul of *Solem. See Heath-*

the deference due by appellate courts in sentencing matters:

> Reviewing courts, of course, should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to discretion that trial courts possess in sentencing convicted criminals. [Footnote omitted.]

463 U.S. at 290, 103 S.Ct. at 3009, 77 L.Ed.2d at 649. The footnote states, in part:

> In view of the substantial deference that must be accorded legislatures and sentencing courts, a reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate.

463 U.S. at 290 n. 16, 103 S.Ct. at 3009 n. 16, 77 L.Ed.2d at 649 n. 16.

A sentence of eight years imposed upon a first offender convicted of genital intercourse with an eleven-year-old child is not so disproportionate to the offense committed as to warrant a finding of cruel and unusual punishment. *See State v. Andrews,* 707 P.2d 900, 911–17 (Alaska App. 1985) (evaluating typical sentences for sexual assault on children under prior law), *petition for hearing granted* (Alaska, December 6, 1985). Since the Alaska Supreme Court has established the same test for cruel and unusual punishment and violations of substantive due process, it necessarily follows that a presumptive sentence of eight years does not violate substantive due process.

■ Dancer contends that the imposition of a presumptive sentence, which can only be modified by recourse to statutorily established aggravating and mitigating factors, denies him the individualized consideration and respect for his rehabilitation which are available to trial courts sentencing those not subject to a presumptive term. Therefore, he claims his right to the equal protection of the law is violated. In

*Stiegele v. State,* 685 P.2d 1255, 1257 (Alaska App.1984), we noted that the Alaska Supreme Court has interpreted our state equal protection and due process provisions more broadly than the federal courts have construed the comparable federal provisions. Consequently, if a statute passes muster under the Alaska constitutional provisions, it will be valid under the federal constitution. To withstand an equal protection challenge, a legislative classification need not be perfect, it "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." 685 P.2d at 1257, quoting *Griffith v. State,* 641 P.2d 228, 233 (Alaska App.1982). In *Stiegele,* we upheld a statute denying bail on appeal to those convicted of unclassified felonies and class A felonies. We noted that the effect of the statute was to deny bail to those convicted of the most serious crimes, which carry the most serious penalties, and we found that to be a reasonable legislative classification in light of the purposes of bail, *i.e.,* assurance of continued appearance and protection of the community. 685 P.2d at 1257–58. The class addressed in *Stiegele* was the class of those convicted of an unclassified felony or a class A felony. Here, we consider the class of first felony offenders who are subject to presumptive sentences, *i.e.,* those who are convicted of a class A or unclassified felony. Presumptive sentencing serves the legislative goal of ensuring uniformity and limiting disparity in sentencing. Presumptive sentencing is appropriate for this limited class of first offenders because the risk of disparity in sentencing is greatest where the maximum penalty is the greatest. Similarly, a class comprised of class A felons and unclassified felons is the group most likely to be dangerous to the community. We stress that in determining whether a legislative classification violates equal protection, we

cock v. State, 670 P.2d 1155, 1160–61 (Alaska App.1983) (Singleton, J. concurring in part and dissenting in part).

look to the classes established by the legislation and not individual members of those classes. *Stiegele*, 685 P.2d at 1258. Finally, if some unspecified mitigating factor should apply to Dancer's case, or if regardless of mitigating factors the presumptive term for Dancer's offense would be "manifestly unjust," he has a remedy in the three-judge panel.

## PRINCIPLE OF REFORMATION

■ Dancer next argues that applying presumptive sentencing to first felony offenders violates Article I, Section 12 of the Alaska Constitution which provides in pertinent part:

Penal administration shall be based upon the principle of reformation and upon the need for protecting the public.

We rejected the argument that presumptive sentencing violates this constitutional provision in *Nell*, 642 P.2d at 1369–70. The constitutional provision addresses penal administration as a system. Necessarily, its scope differs as it is applied to sentencing by judges and to treatment after sentencing by correctional officials. It is not necessary for us to address its impact on corrections in this case. It addresses criminal sentencing by requiring that a criminal sentence must serve one of two goals. It must either provide for the defendant's rehabilitation, or if that is not feasible, it must serve to protect the public. *Koteles v. State*, 660 P.2d at 1202 (Singleton, J., concurring). A severe sentence of imprisonment is not necessarily inconsistent with the rehabilitation of a first felony offender convicted of sexual assault. *State v. Lancaster*, 550 P.2d 1257, 1259 (Alaska 1976). As we noted in *Nell*, presumptive sentencing serves the legislative goal of eliminating unjustified disparity in sentences and obtaining reasonable uniformity in sentences. 642 P.2d at 1369. The legislature could also reasonably conclude that those who commit class A felonies and unclassified felonies or are repeat offenders present a sufficient risk of danger to the public so that a presumptive sentence that emphasizes special and general deterrence,

the isolation of repeat offenders who cannot be deterred or reformed, and the affirmation of community norms, should be given preference over rehabilitation. Such a determination does not violate Article I, Section 12 of the state constitution.

## EXECUTIVE CLEMENCY AND PAROLE POWER

■ Finally, Dancer argues that legislation making those presumptively sentenced ineligible for parole violates Article III, Section 21 of the state constitution, which provides:

*Executive Clemency.* Subject to the procedure prescribed by law, the governor may grant pardons, commutations, and reprieves, and may suspend and remit fines and forfeitures. This power shall not extend to impeachment. A parole system shall be provided by law.

Dancer realizes that the phrase "shall be provided by law" means by the legislature. *See* Alaska Const. art. XII, § 11; *Anderson v. Anchorage*, 645 P.2d 205, 210 (Alaska App.1982) (use of term "by law" in constitution and statutes means "by the legislature"). He argues, however, that inclusion of a reference to parole in an article dealing with executive clemency establishes that the drafters intended that the governor, not the legislature, should determine who was to be eligible for parole, and that the legislature's power to "provide by law" for a parole system was subject to the same constitutional limitations that would apply to legislation purporting to establish procedures whereby the governor could grant pardons, commutations, and reprieves. The minutes of the constitutional convention discussing this provision do not specifically address the question of parole. Dancer points out that the drafters did address the governor's clemency power during their deliberations and apparently intended to prevent secret pardons and commutations by making the governor's powers subject to legislative procedures. *See* 3 Proceedings of the Alaska Constitutional Convention, at 2190–91 (1956). We believe that Dancer has read the provision regarding parole incorrectly. Presumptive

sentencing does not interfere with the governor's power to grant pardons, reprieves, or executive clemency. Dancer is free to apply for clemency, and the governor is free to grant it if he wishes to do so. We are satisfied that Article III, Section 21 was drafted as it was to differentiate between the parole power, which is vested in the legislature, and the governor's analogous power to grant pardons, commutations and reprieves, which would be solely the province of the executive, subject to procedures established by the legislature. Viewed in this way, the legislature is free to establish presumptive sentences for certain offenses and dispense with parole for those offenses without violating Article III, Section 21 of the Alaska Constitution.

## REFERRAL TO THE THREE-JUDGE PANEL

■ Dancer requested the trial court to refer his case to the three-judge panel. The trial court apparently found that an eight-year sentence for Dancer would be manifestly unjust indicating that he would never impose such a sentence for Dancer if he had any discretion, but based on his experience with the three-judge panel concluded that referral would be futile. Dancer did not assign this ruling as error. Consequentially, we may only address it if it constitutes plain error. Alaska R.Crim.P. 47(b). We find plain error in this case. Once Judge Hanson found that a sentence for Dancer of eight years was manifestly unjust, he should have referred the case to a three-judge panel with his recommendations and findings. *See Lloyd v. State*, 672 P.2d 152 (Alaska App.1983). Given Judge Hanson's findings of manifest injustice, referral was mandatory. *See* AS 12.55.165 & .175.

The trial court's decision that presumptive sentencing is constitutional is AFFIRMED. The sentence of the superior court is VACATED, and this case is REMANDED to the superior court with directions to enter an order referring the matter to the three-judge panel established pursuant to AS 12.55.165 & .175.

COATS, J., not participating.