Samuel R. LEAVITT, Appellant,

v.

STATE of Alaska, Appellee.

No. A–3422.

Court of Appeals of Alaska.

Feb. 22, 1991.

Marcia E. Holland, Asst. Public Defender, Fairbanks, and John B. Salemi, Public Defender, Anchorage, for appellant.

Rhonda L. Reinhold, Asst. Dist. Atty., Barrow, Harry L. Davis, Dist. Atty., Fairbanks, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

MANNHEIMER, Judge.

Samuel R. Leavitt was convicted of first-degree assault under AS 11.41.200(a)(1), a class A felony. As a second felony offender, Leavitt was subject to a presumptive term of ten years' imprisonment. AS 12.-55.125(c)(3). Superior Court Judge Michael I. Jeffery found both aggravating and mitigating factors under AS 12.55.155; thus, he was authorized to increase Leavitt's sentence to a maximum of twenty years' imprisonment or reduce it to a minimum of five years' imprisonment. AS 12.55.-155(a)(2).

Leavitt asked Judge Jeffery to refer his case to the three-judge sentencing panel, claiming that manifest injustice would result from the imposition of even the minimum sentence of five years' imprisonment available to Judge Jeffery. *See* AS 12.55.-165. Judge Jeffery ultimately sentenced Leavitt to serve six years in prison with an additional five years suspended. In doing so, Judge Jeffery rejected Leavitt's claim that this sentence was manifestly unjust.

Leavitt now appeals Judge Jeffery's refusal to send his case to the three-judge panel; he renews his claim that a sentence of eleven years' imprisonment with five years suspended is manifestly unjust, and indeed, that any sentence calling for more than two years' imprisonment followed by residential alcohol treatment is manifestly unjust. We affirm the superior court's sentence.

Leavitt was thirty-eight years old at the time of sentencing. He stands six feet four inches and weighs 210 pounds. Leavitt was convicted of assault for attacking his brother Leland with a two-by-four board. Leavitt struck his brother many times, fracturing Leland's jaw, inflicting extensive lacerations of Leland's head and upper body, and causing severe swelling of Leland's eyes and lips. When the police recovered the two-by-four, they found it saturated with blood on one end and bearing blood splatters along its entire length.

Both Leavitt and his brother Leland had been drinking that evening. Leland testi-

fied that Leavitt became quite intoxicated and began growling about something, becoming vicious. Leland picked up the two-by-four in case Leavitt turned violent, something that had happened on previous occasions when Leavitt was drinking. Leland told Leavitt to stay away from him, but Leavitt advanced on his brother. Leland then struck Leavitt once with the two-by-four. Leavitt grabbed the board and began his extensive attack on his brother.

Leavitt, for his part, asserted that he had merely been defending himself from his brother's attack. He also claimed that he had never intentionally struck his brother with the two-by-four. Instead, Leavitt asserted that he pried the board from his brother's hands, threw the board to the floor, and then continued the fight with only his fists.

Leavitt admitted that, having beaten his brother into submission and semi-consciousness, he did nothing to help his brother or seek medical attention for him. Instead, Leavitt sat in a chair and finished his drink. He stayed in the house, watching his brother swell and bleed, for two or three hours. Before leaving the house, Leavitt took off his bloody clothes and shoes; he hid the clothes under a pile of dirty laundry and he hid the shoes under a bed.

Judge Jeffery, who presided over the jury trial, rejected Leavitt's version of the offense and credited Leland's account. The judge concluded that Leavitt had beaten his brother repeatedly, viciously, and needlessly with the two-by-four. While, by good fortune, Leland's most serious injury had been a broken jaw, Judge Jeffery found that the manner in which Leavitt had attacked his brother could easily have resulted in life-threatening injury. From this, Judge Jeffery concluded that Leavitt's assault on his brother constituted a first-degree assault of average to above-average seriousness.

Leavitt had been a basketball star for Barrow High School, and as an adult he coached youth basketball. Many Barrow residents—including Mayor George Ahmoagak—wrote letters praising Leavitt's service to the community. Witnesses at Leavitt's sentencing testified that, when he was not drinking, Leavitt was a good person and an asset to the community. In addition, Leavitt was evaluated by Dr. Steven Parker, a Fairbanks psychologist, who concluded that Leavitt was genuinely remorseful for his conduct, that Leavitt recognized his alcohol problem, and that Leavitt's potential for rehabilitation was among the top twenty-five percent of defendants from an Alaska Native culture.

Judge Jeffery specifically recognized the community support for Leavitt, and he accepted Dr. Parker's conclusion that Leavitt had above-average prospects for rehabilitation. However, a more disturbing side of Leavitt's personality was revealed by Leavitt's criminal history and by several incidents of antisocial behavior which, while they had not led to criminal charges, were verified in the pre-sentence report.

In 1978, Leavitt was convicted of disorderly conduct. This normally minor misdemeanor was particularly aggravated in Leavitt's case: Leavitt had fought with and obstructed firefighters who had come to extinguish a blaze in a Barrow residence. Leavitt even attempted to impede the firefighters from rescuing a woman, Mary Leavitt, who was still inside the burning building. Leavitt was also convicted of assault and battery in 1978, and in 1980 he was charged with driving while intoxicated, which was reduced to negligent driving in exchange for his plea of no contest.

Leavitt's prior felony occurred in 1983: he drove a snow machine while intoxicated, crashing the vehicle and killing his passenger, a young woman. Charged with manslaughter, Leavitt was convicted by a jury of the lesser offense of negligent homicide. Judge Jeffery, who presided over the trial of that prior offense, imposed a sentence of five years' imprisonment with four years suspended. Leavitt served the one year in jail, and he then successfully completed his probation on that offense—just two days before he attacked his brother.

In addition to Leavitt's prior criminal convictions, the pre-sentence report detailed other instances in which Leavitt had become violent after drinking. In 1981,

Leavitt had become drunk and violent, attacking his sister who lived in Wainwright. When his brother Leland intervened, Leavitt knocked his brother down and then kicked him in the head while he lay on the ground, breaking his jaw.

In 1988, Leavitt became drunk and, for no apparent reason, punched and knocked down Grant Kignak, an elderly Barrow resident. Later that evening, Kignak was forced to pick up a baseball bat to defend himself and other people in the house from Leavitt's continued violent behavior. In April, 1989, Leavitt became drunk and threw a flowerpot at his brother's head. The next month, May, 1989, Leavitt's behavior became so violent that the other members of his family decided to leave the house.

Leavitt has tried several short-term alcohol programs, but always without success. It is unclear why Leavitt becomes so violent when he drinks; witness Elise Patkotak referred to the unknown "private demons ... chasing" Leavitt.

Judge Jeffery concluded that, even though Leavitt might be a fine citizen when sober, Leavitt exhibits a reckless and violent nature when he drinks. Judge Jeffery also found that community condemnation was quite strong for a person like Leavitt who assaulted his brother so violently and then sat and watched him suffer. In spite of Leavitt's good potential for rehabilitation, Judge Jeffery concluded that the sentencing goals of isolation, deterrence, and community condemnation required a lengthy sentence of imprisonment.

Because Leavitt was a second felony offender convicted of a class A felony, he faced a presumptive term of ten years' imprisonment. Judge Jeffery found two aggravating factors, the victim was a member of the defendant's household, AS 12.-55.155(c)(18); and the defendant had a history of criminal incidents similar to the present offense, AS 12.55.155(c)(21). Judge Jeffery also found two mitigating factors: the defendant acted because of duress or threat from the victim, AS 12.55.-155(d)(3); and the defendant acted because of significant provocation from the victim, AS 12.55.155(d)(7).

Because both aggravating and mitigating factors had been proved, Judge Jeffery was authorized to adjust the presumptive term up to the twenty-year maximum sentence or down to five years in prison. AS 12.55.155(a). Placing great weight on Leavitt's potential for rehabilitation, Judge Jeffery significantly reduced Leavitt's presumptive ten-year period of actual imprisonment by imposing a total sentence of eleven years but then suspending five of those years, leaving Leavitt with six years to serve.

Our review of a sentence imposed in a criminal case is governed by the "clearly mistaken" standard announced by the supreme court in *McClain v. State*, 519 P.2d 811 (Alaska 1974). Likewise, the "clearly mistaken" standard governs our review of a sentencing judge's decision that there is no manifest injustice requiring referral of a case to the three-judge panel. *Dancer v. State*, 715 P.2d 1174, 1177 (Alaska App.1986). The "clearly mistaken" standard of review requires this court to make an independent examination of the sentencing record. *McClain*, 519 P.2d at 813. At the same time, our review is tempered by the principle that decisions regarding the weight or emphasis to be given the various *Chaney* criteria, *State v. Chaney*, 477 P.2d 441 (Alaska 1970), are primarily entrusted to the discretion of the sentencing judge. *McClain*, 519 P.2d at 813, *Asitonia v. State*, 508 P.2d 1023, 1026 (Alaska 1973). *See Lloyd v. State*, 672 P.2d 152, n. 3 at 155 (Alaska App.1983).

From our review of the record, we conclude that Judge Jeffery's sentence was not clearly mistaken. Leavitt's assault on his brother was a serious one; Judge Jeffery concluded that, given the manner in which Leavitt assaulted his brother, the relatively minor scope of Leland Leavitt's injuries was completely fortuitous. This conclusion is supported by the evidence. Additionally, Leavitt is not a youthful offender; he is a mature adult who has a history of violent and life-endangering behavior when he is drunk. Despite having

spent one year in prison for his previous felony, Leavitt has been unwilling or unable to come to grips with the problems underlying his antisocial behavior.

It is true that Leavitt enjoys strong community support. Moreover, Judge Jeffery concurred with the psychologist's evaluation that Leavitt has above-average potential for rehabilitation. But, even in light of these favorable factors, the record supports Leavitt's sentence of six years to serve with an additional five years suspended.

For these reasons, we reject Leavitt's contention that it was necessary to refer his case to the three-judge sentencing panel. It was possible for Judge Jeffery to impose a fair sentence within the sentencing range granted to him by AS 12.55.125 and AS 12.55.155.

The sentence of the superior court is AFFIRMED.