919 So.2d 1146 (2005)
Curtis WEATHERSBY, Appellant
v.
STATE of Mississippi, Appellee.
No. 2004-KA-00994-COA.
Court of Appeals of Mississippi.
October 18, 2005.
*1147 Daniel Dewayne Ware, Magee, attorney for appellant.
Office of the Attorney General by Billy L. Gore, attorney for appellee.
Before KING, C.J., IRVING and BARNES, JJ.
IRVING, J., for the Court.
¶ 1. A Simpson County jury convicted Curtis Weathersby of touching a child for lustful purposes in violation of Mississippi Code Annotated section 97-5-23(1) (Rev. 2000). The court sentenced Weathersby to serve thirty months in the custody of the Mississippi Department of Corrections. Weathersby filed a motion for a new trial which the court denied.
¶ 2. Feeling aggrieved, Weathersby appeals and argues that the lower court erred in denying his motion for judgment of acquittal or, in the alternative, for a new trial.
¶ 3. Finding no reversible error, we affirm.

FACTS
¶ 4. In the case sub judice, the only undisputed fact is whether Weathersby came to Gina's apartment on the night of July 29, 2003.[1] As to the remaining facts, both the State and Weathersby gave varying accounts of the events that led to Weathersby's conviction.
¶ 5. According to the State, Weathersby came to Gina's apartment on the night of July 29, 2003, and asked to spend the night. Gina, who alleged that she and Weathersby were engaged in a romantic relationship, allowed Weathersby to stay at her apartment. On that same night, Gina's twelve-year-old daughter, Abby, Gina's fifteen-year-old son, Abe, and Abe's friend, Wayne, were at the apartment eating pizza and watching television. Abe and Wayne fell asleep on the living room couch, while Abby slept on a mattress on the living room floor.
¶ 6. According to Abby, she awoke around 4:00 to 4:30 a.m. to find Weathersby lying on the mattress at her side, kissing and licking her breasts and rubbing her "personal area" after he unbuttoned her pants. Abby testified that Weathersby continued this activity for about ten to fifteen minutes. Abby also testified that during this time period, she moved away *1148 from Weathersby in an attempt to get him to stop. Abby further testified that when her mother awoke that morning, Abby immediately went to her mother and told her what Weathersby had done. Gina testified that after her daughter spoke to her, she went into the living room, turned on the lights, and found Weathersby lying on the floor beside the mattress. Gina said that she kicked Weathersby, screamed and hollered at him for what he had done to her daughter, and then went outside to call the police on her cell phone. According to Gina, Weathersby followed her outside, asked for her forgiveness, stated that he did not mean to do it, and said he had problems and needed help. Gina stated that Weathersby got into his car and left the apartment before the police arrived.
¶ 7. Abe testified that he awoke around 4:00 to 4:30 a.m. to the sound of his mother screaming and hollering at Weathersby. Abe also testified that Weathersby was lying on the floor next to the mattress at that time. Wayne's testimony was the same except that he estimated the time to be around 4:30 or 5:00 a.m.
¶ 8. James Hodges, chief deputy and chief investigator for the Simpson County Sheriff's Department, investigated the matter involving Weathersby. Officer Hodges testified that, when he investigated the matter involving Weathersby, Weathersby was forty-six years old.
¶ 9. Weathersby's defense was that he simply was not present at the time and place where the allegedly inappropriate touching of Abby took place. He also denied having a romantic relationship with Gina. However, he admitted that he went to Gina's apartment around 8:00 p.m. on the night of July 29, 2003, but maintained that he went to the apartment with his wife, Patricia, and that they left around 11:30 p.m. and went to his mother-in-law's house where they spent the night. He also admitted that, while at Gina's apartment, he "may have bumped up against [Abby] or something." However, he denied that he ever touched Abby in an inappropriate manner or ever actually put his hands on her. Weathersby's testimony was also filled with possible reasons why each person testifying on behalf of the State might have had a bias against him. He testified that Abby was upset with him over a puppy that he did not purchase for her. As to Gina, he said she was upset with him because she wanted a romantic relationship with him. With respect to Abe, Weathersby testified that Abe testified as he did simply because Abe was Gina's son. As to Wayne, Weathersby said he testified the way he did because Wayne knew that Weathersby saw him watching Gina getting dressed.
¶ 10. In support of his alibi, Weathersby produced his wife, Patricia, and his mother-in-law, Lena Wedgeworth, as witnesses. Patricia testified that her husband never dated Gina or spent the night away from home. Patricia also corroborated Weathersby's testimony that he and she left Gina's apartment around 11:30 p.m. on July 29, 2003, and went to Wedgeworth's home, where they both immediately went to bed. According to Patricia, her husband never left her side that entire evening. Wedgeworth testified that she remembered the Weathersbys leaving the house together on that particular night but did not know exactly when the couple returned.
¶ 11. The rebuttal testimony of Abby, Gina, Abe, and Wayne was that Weathersby came to the apartment alone and was not with another woman on the night of July 29, 2003. They also testified that they had never seen Patricia prior to the date of trial.

*1149 ANALYSIS AND DISCUSSION OF THE ISSUES

1. Weight of the Evidence
¶ 12. "A motion for a new trial challenges the weight of the evidence. A reversal is warranted only if the lower court abused its discretion in denying a motion for new trial." Howell v. State, 860 So.2d 704, 764 (¶ 212) (Miss.2003) (citing Edwards v. State, 800 So.2d 454, 464 (¶ 25) (Miss.2001)). "A greater quantum of evidence favoring the State is necessary for the State to withstand a motion for a new trial, as distinguished from a motion for J.N.O.V." Pharr v. State, 465 So.2d 294, 302 (Miss.1984). "[A] new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict." Bush v. State, 895 So.2d 836, 844 (¶ 18) (Miss.2005) (quoting Amiker v. Drugs for Less, Inc., 796 So.2d 942, 947 (¶ 18) (Miss.2000)). The verdict must be "so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." Id. However, the evidence should be weighed in the light most favorable to the verdict. Id.
¶ 13. The Mississippi Supreme Court has repeatedly emphasized its role when confronted with conflicting testimony: "it is the function of the jury to pass upon the credibility of the evidence." Evans v. State, 725 So.2d 613, 680 (¶ 293) (Miss.1997) (quoting Bond v. State, 249 Miss. 352, 357, 162 So.2d 510, 512 (1964)).
¶ 14. In a criminal prosecution, the jury may accept the testimony of some witnesses and reject that of others, and may accept in part and reject in part the testimony of any witness, or may believe part of the evidence on behalf of the State and part of that for the accused, and the credibility of such witnesses is not for the reviewing court, but only for the jury.
Id. at 680-81 (¶ 293) (citations omitted).
¶ 15. We acknowledge there is conflicting testimony as to whether Weathersby was present at Gina's apartment in the early morning hours of July 30, 2003. However, that is of no effect since the jury found that the State produced enough credible evidence to prove beyond a reasonable doubt that Weathersby committed the crime of touching a child for lustful purposes. Abby testified as to what Weathersby did to her in the early morning hours of July 30, 2003. Other witnesses for the State testified that Gina screamed and yelled at Weathersby as he was lying on the floor next to the mattress where Abby slept that night. As stated earlier, it is the function of the jury, not the reviewing court, to pass upon the credibility of witnesses and evidence. The jury was presented with two versions of what happened, and it obviously found the State's version more credible.
¶ 16. We find that from the evidence presented at trial, reasonable jurors could have found beyond a reasonable doubt that Weathersby was guilty of touching a child for lustful purposes. Allowing the verdict of the jury to stand would not sanction an unconscionable injustice. Therefore, we find that the lower court did not abuse its discretion in denying Weathersby's motion for a new trial.

2. Sufficiency of the Evidence
¶ 17.[I]n considering whether the evidence is sufficient to sustain a conviction in the face of a motion for directed verdict or for judgment notwithstanding the verdict, the critical inquiry is whether the evidence shows "beyond a reasonable doubt that the accused committed the act charged, and that he did so under such circumstances that every element *1150 of the offense existed; and where the evidence fails to meet this test, it is insufficient to support a conviction."
Bush v. State, 895 So.2d at 843 (¶ 16) (Miss.2005) (quoting Carr v. State, 208 So.2d 886, 889 (Miss.1968)). "[T]he relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (citing Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).
¶ 18. In order to convict Weathersby of touching a child for lustful purposes, the State was required to prove beyond a reasonable doubt: (1) that Weathersby was above the age of eighteen years, (2) that he touched or rubbed the child with his hands or any part of his body for the purpose of gratifying his lust or indulging his depraved sexual desires, and (3) that the child was under the age of sixteen years. Miss.Code Ann. § 97-5-23(1) (Rev.2000).
¶ 19. Officer Hodges's testimony that Weathersby was forty-six years old when the incident occurred satisfied the first element. As stated earlier, Abby, who was twelve years old when the incident occurred, gave compelling testimony which satisfied the second element of the offense. The jury chose to believe the testimony of Abby as to what happened and could have reasonably inferred that Weathersby's actions were prompted by the need to gratify his lust or indulge his depraved sexual desires. Viewing the evidence in the light most favorable to the State, the testimony of various witnesses provided sufficient evidence from which a rational trier of fact could have found that the State proved beyond a reasonable doubt that Weathersby committed all of the elements of the crime of touching a child for lustful purposes.
¶ 20. We find that the verdict was not against the overwhelming weight of the evidence and that there was sufficient evidence from which to convict Weathersby. Therefore, we affirm the judgment of the Circuit Court of Simpson County.
¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF SIMPSON COUNTY OF CONVICTION OF TOUCHING A CHILD FOR LUSTFUL PURPOSES AND SENTENCE OF THIRTY MONTHS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND LEE, P.JJ., MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.
NOTES
[1] We have changed the names of the minor victim, her mother, and other witnesses to protect the identity of the victim. We have chosen to use the name "Gina" for the victim's mother, the name "Abby" for the minor victim, the name "Abe" for the victim's brother, and the name "Wayne" for the brother's friend.